C D BARNES ASSOCIATES, INC v STAR HEAVEN, LLC

Docket No. 300263. Submitted September 5, 2012, at Grand Rapids.
    Decided April 11, 2013, at 9:00 a.m. Leave to appeal sought.
    C. D. Barnes Associates, Inc., brought an action in the Ottawa Circuit
        Court against Star Heaven, L.L.C., David Findling, and others,
        including Flagstar Bank, FSB, seeking among other things to
        foreclose on its claims of lien under the Construction Lien Act
        (CLA), MCL 570.1101 *et seq.* The action arose out of a failed
        construction project undertaken by Star Heaven for which Flag-
        star provided mortgage financing and Barnes served as the general
        contractor. Barnes had performed its first physical improvement to
        the property for Star Heaven in August 2005. In October 2005,
        Star Heaven filed a notice of commencement under MCL 570.1108
        using a metes and bounds description of the property. In May 2006,
        Barnes executed a sworn statement under MCL 570.1110(4) that
        the property was free from claims of construction liens. Also in
        May 2006, Star Heaven recorded a master deed, which redefined
        the project as a condominium project. Shortly thereafter, Flag-
        star's loans to Star Heaven closed, and Flagstar recorded its
        mortgage. Star Heaven subsequently amended the master deed to
        designate individual condominium units, among other things. Star
        Heaven paid most of Barnes's invoices, but left seven, totaling
        $361,000, unpaid. Barnes last provided labor and materials to the
        site in March 2008. In May 2008, Barnes recorded nine separate
        claims of lien for the unpaid amount. Six referred to particular
        individual units within the project, and the other three were filed
        against the overall project and used the metes and bounds descrip-
        tion for the entire property set forth in the notice of commence-
        ment. In December 2008, Star Heaven assigned all of its interests
        in the property to Findling for the purpose of liquidating the assets
        and distributing the proceeds to creditors. After Barnes filed this
        action in May 2009, Flagstar contested the priority of Barnes's
        construction lien over its mortgage. The court, Calvin L. Bosman,
        J., entered a default against Star Heaven, and Barnes moved for
        partial summary disposition on the issue of the priority of its lien
        over Flagstar's mortgage. The court granted Barnes's motion but
        gave Flagstar 30 days to locate a subordination agreement alleg-
        edly relevant to priority and move to set aside the order. Flagstar

subsequently moved to modify, amend, or vacate the summary disposition order, and Barnes moved for entry of a foreclosure judgment that included the unpaid amount and costs and attorney fees. The court denied Flagstar's motion and granted Barnes's motion in part. The court concluded that the pendency of another action brought by Findling before a different judge precluded the entry of a foreclosure judgment, but the court determined that the full amount of Barnes's lien was valid, that the lien had priority over Flagstar's mortgage, and that the lien attached to Star Heaven's interest in the property as held by Findling. The court subsequently awarded Barnes attorney fees under the CLA. Flagstar appealed by leave granted.

The Court of Appeals *held*:

1. Flagstar's discharge of its mortgage as a part of the judicially approved sale of the property in the other action that Findling brought did not render this appeal moot or otherwise deprive Flagstar of standing to challenge the trial court's orders. An issue becomes moot when an event occurs that renders it impossible for the reviewing court to grant relief. Part of the proceeds of the sale were placed in escrow pending resolution of the priority dispute presented in this action, and whether Barnes or Flagstar was entitled to those funds depended solely on whether Barnes's construction lien or Flagstar's mortgage had priority.

2. Barnes properly filed its claims of lien using the metes and bounds property descriptions set forth in Star Heaven's notice of commencement filed under MCL 570.1108. MCL 570.1107(1) and MCL 570.1111(2) required that Barnes's claims of lien refer to the legal description set forth in the notice of commencement.

3. The trial court did not err when it found that Barnes's claims of lien were valid and had priority over Flagstar's interest. Pursuant to MCL 570.1119(3), a construction lien that arises under the CLA takes effect upon the first actual physical improvement to the property and has priority over all interests recorded after the first actual physical improvement. A lien relates back to the first actual physical improvement, regardless of when or by whom the particular work was done or the materials were furnished. While MCL 570.1126 of the CLA and MCL 559.232 of the Condominium Act provide that a construction lien for work performed on a condominium unit or an improvement furnished to a condominium unit attaches only to the condominium unit on which the work was performed or for which the improvement was furnished, when Barnes performed its first actual physical improvement to the property Star Heaven had yet to record the master deed designating the project as a condominium project and

identifying condominium unit numbers. Consequently, at the time the lien arose, Barnes was providing material and labor to a construction project as defined by the metes and bounds description set forth in the notice of commencement, not to a condominium unit, and was not required to file separate liens on each condominium unit.

4. Barnes's May 2, 2006, sworn statement substantially complied with the requirements of MCL 570.1110(4). The CLA gives owners information by requiring general contractors to make sworn statements itemizing their bills. A sworn statement notifies the owner of each subcontractor, supplier, and laborer with whom the general contractor contracted. Thus, the owner can rely on a sworn statement as a comprehensive list of potential lien claimants. The purpose of a sworn statement is to enable the owner to retain out of any money due or to become due to the contractor an amount sufficient to pay the subcontractors, suppliers, and laborers. A sworn statement must be in substantially the form set forth in the statute and must list (1) the name of each subcontractor, supplier, and laborer with whom the general contractor contracted, (2) the type of improvement furnished by each, (3) the total contract price, (4) the amount already paid to each, and (5) the amount currently owing to each. It must also be subscribed and sworn to before a notary public. Barnes's sworn statement represented that the property was free from claims of construction liens, but did not state that it was free from the possibility of construction liens as required by the statute. It nonetheless substantially complied with the statute because there was no dispute that it advised the property owner of outstanding amounts owed to contractors, subcontractors, or laborers who might have a lien on property as of the date of the statement, thus permitting the owner to retain from payments to the general contractor any money owed to subcontractors or laborers.

5. The trial court did not err by concluding that Barnes's claims of lien were timely filed and covered the entire project and not just each condominium unit that received labor and material within 90 days of the filing of the claims of lien. MCL 570.1111(1) states that a construction lien under the CLA ceases to exist unless a claim of lien is recorded within 90 days after the lien claimant's last furnishing of labor or material for the improvement pursuant to the lien claimant's contract. Thus, the time within which a claim of lien must be filed is determined by reference to the contract under which the labor or material was provided, that is, the contract necessarily defines the scope of the improvement for which the lien exists. MCL 570.1103(4) does not require a written

contract. The entire project was the subject of the contract, and it was this property that was listed in the notice of commencement.

6. The trial court did not err by permitting Barnes to satisfy its lien out of the proceeds of the sale of Star Heaven's remaining interest in the property rather than reducing the amount of the lien for work and materials provided to condominium units that were subsequently sold. Barnes's lien attached to the entire interest of Star Heaven in the property described in the notice of commencement because Star Heaven exposed the entire project to the possibility of a lien for payment for work performed.

7. The trial court did not abuse its discretion by denying Flagstar's motion to amend, vacate, or modify the prior order that granted Barnes's motion for partial summary disposition with regard to the priority of its lien. Flagstar asserted that the trial court's order was premature because discovery remained open and, further, that relief from that order was warranted under MCL 2.612(C)(1)(f). While summary disposition can be premature when discovery is ongoing, the mere fact that the discovery period remains open does not automatically mean that a trial court's decision to grant summary disposition was untimely or otherwise inappropriate. The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position, which Flagstar failed to establish. There are three requirements for relief to be granted under MCR 2.612(C)(1)(f): the reason for setting aside the judgment must not fall under subrules (a) through (e), setting aside the judgment must not detrimentally affect the substantial rights of the opposing party, and extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. Generally, relief is granted under subrule (f) only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. Flagstar failed to show any justification to set aside the trial court's order under MCR 2.116(C)(1)(f).

8. The trial court did not err by awarding Barnes reasonable attorney fees. MCL 570.1118(2) allows the court to award reasonable attorney fees to a lien claimant who is the prevailing party. The trial court correctly determined that Barnes was the prevailing lien claimant, and no more was required to permit the award. The trial court nonetheless considered the complexity of the case, the validity of Flagstar's position, the amount and purpose of the fees charged, and the results obtained. It determined that Barnes was not entitled to any fees for prosecuting the action to enforce its lien up to and through the granting of partial summary disposition on the priority of its lien because it had been reasonable for

Flagstar to contest the validity and priority of that lien and ask the court for time to find the subordination agreement. It concluded, however, that Flagstar's continued litigation of the issue of the priority of Barnes's lien in the absence of any subordination agreement elevating the Flagstar mortgage over the lien became unreasonable and warranted an award of attorney fees, particularly when the subsequent motion raised no issue that could not have been raised in the original response opposing summary disposition.

9. The trial court did err, however, by combining the awarded attorney fees with the amount of the construction lien. MCL 570.1107(1) states that a construction lien may not exceed the amount of the lien claimant's contract less payments made on the contract. Thus, the statute requires that the amount of any construction lien not exceed the amount the property owner owes on the contract with the claimant. Adding attorney fees to the unpaid amount of the contract would, as a matter of mathematical certainty, result in a total lien amount higher than allowed by law. Thus, because the statute expressly limits the amount of the lien to the amount owed for the work performed, an award of attorney fees may not be added to the amount of a construction lien, but must instead be awarded by a judgment separate from the lien itself. Moreover, it would be improper to award attorney fees for work that was not related to Flagstar. Remanding the case was necessary for the trial court to remove the award of attorney fees to Barnes from the construction lien and enter a separate judgment awarding attorney fees to Barnes against Flagstar that were incurred as a result of work attributable to the actions Flagstar took more than 30 days after the grant of partial summary disposition, the time given for Flagstar to locate the subordination agreement.

Affirmed in part, reversed in part, and remanded.

1. LIENS — CONSTRUCTION LIENS — CLAIMS OF LIEN — CONDOMINIUMS.

A construction lien that arises under the Construction Lien Act takes effect upon the first actual physical improvement to the property and has priority over all interests recorded after the first actual physical improvement; a lien relates back to the first actual physical improvement, regardless of when or by whom the particular work was done or the materials were furnished; the Construction Lien Act and the Condominium Act provide that a construction lien for work performed on a condominium unit or an improvement furnished to a condominium unit attaches only to the condominium unit on which the work was performed or for

which the improvement was furnished; if a contractor performs its first actual physical improvement on a construction project described by a metes and bounds description in the notice of commencement and the owner subsequently designates it as a condominium project and identifies individual condominium unit numbers, then at the time the lien arose the contractor was providing material and labor to the construction project defined by the metes and bounds description, not to a condominium unit, and the contractor is not subsequently required to file separate liens on each condominium unit (MCL 559.232, 570.1107[1], 570.1108, 570.1111[2], 570.1119[3], 570.1126).

2. JUDGMENTS — RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING — GROUNDS — OTHER REASONS FOR GRANTING RELIEF.

There are three requirements for relief from a final judgment, order, or proceeding under MCR 2.612(C)(1)(f), which allows relief for any reason, other than the grounds specified in subrules (a) through (e), justifying it: the reason for setting aside the judgment must not fall under subrules (a) through (e), the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice; generally, relief is granted under subrule (f) only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered.

3. LIENS — CONSTRUCTION LIENS — ATTORNEY FEES — SEPARATE JUDGMENTS.

A court may award reasonable attorney fees to a lien claimant under the Construction Lien Act who is the prevailing party; the award of attorney fees may not be added to the amount of a construction lien, but must instead be awarded by a judgment separate from the lien itself (MCL 570.1107[1], 570.1118[2]).

*Hilger Hammond* (by *Aileen M. Leipprandt*) for C. D. Barnes Associates, Inc.

*Plunkett Cooney* (by *Robert G. Kamenec* and *Kurt E. Riedel*) for Flagstar Bank, FSB.

Before: WILDER, P.J., and O'CONNELL and K. F. KELLY, JJ.

WILDER, P.J. Defendant Flagstar Bank, FSB, appeals by leave granted an August 27, 2011, judgment that established that the construction lien of C. D. Barnes Associates, Inc., was valid for its full amount and had priority over Flagstar's mortgage interest. We affirm the construction lien judgment in favor of Barnes, affirm in part and reverse in part the award of attorney fees to Barnes, and remand this case.

### I. BASIC FACTS

This action arises out of a failed construction project undertaken by defendant Star Heaven, L.L.C., for which Flagstar provided mortgage financing and Barnes served as the general contractor.

The pertinent facts are largely undisputed. In February 2005, Star Heaven purchased a partially completed apartment project in Grand Haven. At the time of acquisition, the property consisted of 19 buildings, each containing, or planned to contain, 10 apartment units of varying sizes, along with a pool and a clubhouse, all in different stages of completion.

After Star Heaven acquired the site, it began to market the project as a "high-end condominium project" and eventually changed the name to "Grand Haven Club." In July 2005, Star Heaven hired Barnes to finish construction of the 19 buildings on the site and perform upgrades to some of the existing units and structures consistent with the new vision for the project. Barnes submitted a fixed-price contract to Star Heaven for the work to be performed, but because of uncertainty about the configuration of the units to be constructed as the project progressed, Barnes and Star Heaven instead entered into a time and materials agreement under which Barnes was to submit monthly invoices with supporting documentation to Star Heaven

for work performed at the site and Star Heaven was to pay each application for payment within 30 days of its receipt.

Barnes performed its first physical improvement to the property for Star Heaven on or about August 10, 2005. On October 4, 2005, Star Heaven filed a notice of commencement as described by MCL 570.1108, which is § 108 of the Construction Lien Act, MCL 570.1101 *et seq.*

On May 2, 2006, at Star Heaven's request, Barnes executed a sworn statement that represented that, as of that date, the subject property was "free from claims of construction liens." On May 16, 2006, Star Heaven recorded the master deed for the new condominium project. Shortly thereafter, Flagstar's loans to Star Heaven closed. Flagstar recorded its mortgage on May 23, 2006.

In May and October 2007, Star Heaven filed amended master deeds for the project, which changed the name of the condominium to "Grand Haven Club," amended the total acreage included in the property, redesignated the property into Units 1 to 40 and added Units 41 to 60 to the project.

During the course of the project, Barnes submitted 27 applications for payment to Star Heaven, which totaled approximately $3.11 million. Star Heaven paid the first 20 invoices, leaving 7 invoices totaling $360,909.11 unpaid. Before ceasing work for nonpayment, Barnes completely enclosed all 19 buildings, with two of the buildings achieving "occupancy" status, and another 11 or 12 of the buildings being completed to "white box[]" condition, such that each unit in each building was complete with all mechanical, electrical, and plumbing and was "roughed-in" with drywall. Star Heaven never expressed any concerns with the work

that was performed at the site; the explanation for late or slow payments was always an inability to pay.

Barnes last provided labor and materials to the site on March 5, 2008. On May 8, 2008, Barnes recorded nine separate claims of lien, in the amount of $360,909.11. Six of these claims of lien referred to particular individual unit numbers within the project. The three remaining claims were filed against the overall project. Each of the three liens filed against the project referred to the last day on which Barnes provided any work to the "overall project," and each used a metes and bounds description encompassing the entire property set forth in the 2005 notice of commencement; they did not refer to the dates on which labor or materials were provided to any individual condominium unit within the project.

On December 31, 2008, Star Heaven assigned all of its interests in the property to David Findling, for the purpose of liquidating the assets and distributing the proceeds to creditors according to applicable statutes.

On May 8, 2009, Barnes filed the instant complaint, seeking to foreclose on its claims of lien under the Construction Lien Act and alleging claims of breach of contract and unjust enrichment against Star Heaven and Findling. Flagstar contested the priority of Barnes's construction lien over its mortgage.

On December 24, 2009, a default was entered against Star Heaven. Thereafter, on December 28, 2009, Barnes moved for partial summary disposition on the issue of the priority of its lien over the Flagstar mortgage. Barnes argued that because there was no issue of material fact that Barnes's first day of actual physical improvement to the property predated the recording of Flagstar's mortgage, its liens had priority over the Flagstar mortgage. Barnes also asserted in support of

its motion that, in response to discovery requests, Flagstar disclosed no facts and produced no documents contesting the priority of the construction lien.

Flagstar argued that summary disposition was premature because discovery was not set to close until April 23, 2010, and additional discovery stood a fair chance of uncovering evidence to challenge the priority of Barnes's lien over the mortgage. Flagstar explained that its loan officer who oversaw the closing of the loan between Flagstar and Star Heaven was no longer with the company and consequently was not available to provide the details of the circumstances surrounding the closing of the loan. Flagstar further stated that the documents supporting the closing of the loan had moved several times over the $3^{1}/_{2}$ years since the loan's closing, "which has made securing documentation to support that obligation difficult." Flagstar assured the trial court that it would continue to work to locate additional information.

On January 18, 2010, the trial court held a hearing on Barnes's motion for summary disposition, during which the parties reiterated the positions set forth in their briefs. Barnes asserted the priority of its lien on the basis of the facts before the trial court, and it argued that under the circumstances, and considering the length of time it took to get all parties properly served, Flagstar had more than sufficient time to conduct discovery. Flagstar acknowledged that the evidence submitted suggested that Barnes's construction lien could have priority, but it also asserted that this view was the result of an incomplete picture because "it is reasonable to believe that additional documentation exists that supports Flagstar's position that a subordination agreement may have been executed at the time of the closing of this loan." Counsel for Flagstar admit-

ted that he had not been able to "track . . . down" the loan officer who closed the loan or locate what he believed to be the complete documentation relating to the closing of the loan. Counsel explained that there were "two factors that suggest that [a subordination] agreement may exist":

> First of all, it's an eight-million-dollar construction loan. This loan would have been from the beginning very well documented. There would have been a lot of safeguards in place to ensure that any lien claimants would have subordinated their rights prior to the closing of the loan and especially in light of the Notice of Commencement which had been recorded months prior. We have not found yet, and we'll admit that to the Court, a subordination agreement. It is our belief, however, that it would be reasonable in this circumstance to think that such an agreement exists.
>
> The second factor that suggests that such an agreement exists is the title work. . . . The title commitment we received from the title company had as a requirement a release of all potential liens from potential lien claimants who may have done work prior to the closing of the loan. That requirement was in place on May 10th of 2006. Two weeks later, when that loan closed, that requirement was, was removed by the title company and there is no exception to that requirement in the title commitment. This suggests that something was provided to the title company which satisfied their requirement of a document that would have subordinated or released the potential lien claims that were known to be out there at that time.

Flagstar asked the court to deny Barnes's motion and allow it until the end of discovery (which was approximately three months away) "to just get to the bottom of what happened" to see if there was a subordination agreement or, alternatively, take the motion under advisement and afford it some defined period, such as

six to eight weeks, to continue its efforts to unearth evidence of such an agreement.

At the close of the hearing, the trial court ruled from the bench as follows:

> [Flagstar talks] about the discovery period, but, actually, the discovery is so that the parties can find out from each other what they have, and [Flagstar is] trying to delay discovery so [it] can find out what [it has itself] and not from somebody else.
>
> I'm going to grant [Barnes's] motion, but if [Flagstar] find[s] a subordination agreement or what [it] think[s] is a copy of the subordination agreement, [it has] 30 days in which to file a motion to set aside this order, until February 18th [2010].

The trial court entered an order effectuating this ruling on February 9, 2010.

While the instant action was pending, a separate action was also pending in the Ottawa Circuit Court before a different trial judge, Judge Edward Post. This other action was brought by Findling to liquidate the property for the benefit of Star Heaven's creditors. As the parties explained to the trial court in the instant action, the sale of the property was proceeding as part of that separate action and that sale was expected to close in March 2009. The parties and the trial court agreed, therefore, that the instant action was solely for the purpose of determining the priority and amount of valid liens to be asserted against the proceeds of that sale.

Flagstar later moved to modify, amend, or vacate the order granting Barnes's motion for summary disposition. Flagstar filed its motion under MCR 2.612 (as a motion for relief from judgment), under MCR 2.613 (as a request to "correct" the court's prior order), and under MCR 2.116(C)(10) and (I)(2) (as a motion for summary disposition of Barnes's claims). Flagstar as-

serted that the May 2, 2006, sworn statement, in which Barnes represented that the property was free of construction liens as of that date, barred Barnes from asserting that its lien had priority over Flagstar's mortgage. Flagstar also claimed that the sworn statement was defective because, rather than state that the property was free from "the possibility of construction liens" as required by MCL 570.1110(4) of the Construction Lien Act, the sworn statement provided only that the property was "free from construction liens." Flagstar further asserted that Barnes's claims of lien were invalid because they referred to the metes and bounds description for the entire property and not to the individual condominium units to which materials or labor or both were supplied. Last, Flagstar maintained that the liens on the entire property were invalid because Barnes had provided work and materials only to one particular condominium unit within 90 days of recording its claims of lien.

Barnes opposed Flagstar's motion, asserting that Flagstar's motion was "essentially a motion for reconsideration" and that it did not present any new evidence for, or any legal basis requiring, reversal of the trial court's prior decision. Barnes argued that its May 2, 2006, sworn statement did not alter the priority of its lien over the mortgage because the sworn statement was not a lien waiver and did not extinguish lien rights under the Construction Lien Act. Barnes averred that if Flagstar had wanted a lien waiver, it could have requested one pursuant to the Construction Lien Act. Additionally, Barnes asserted that it was permitted to use the metes and bounds legal description set forth in the notice of commencement in its claims of lien, and it denied that Barnes's lien was rendered invalid because it did not refer to individual condominiums units within the project. Finally, Barnes argued that its claims of lien

were timely filed because they were filed well within 90 days of the last furnishing of labor and materials for improvements to the project as contracted for by Star Heaven.

While Flagstar's motion was pending, Barnes moved for entry of a foreclosure judgment, asking the trial court to enter a judgment in its favor against the property in the amount of $360,909.11, together with its costs, attorney fees, and other relief allowed under the Construction Lien Act.

After conducting a hearing on June 11, 2010, the trial court issued an opinion and order granting in part and denying in part Barnes's motion for entry of judgment and denying Flagstar's motion to modify, amend, or vacate its prior order granting partial summary disposition with respect to priority. The trial court noted that the sworn statement did not constitute newly discovered evidence as required by MCL 2.612(C)(1)(b), making Flagstar's reliance on this court rule misplaced. Additionally, the trial court held that MCR 2.613 likewise was inapplicable "because Flagstar did not provide the sworn statement as evidence or present the arguments that it now submits in its first brief in opposition to [Barnes's] motion for partial summary disposition." As a result, the trial court concluded that Flagstar's motion was in essence a motion for reconsideration under MCR 2.119(F). In this context, the trial court proceeded to consider and reject each of Flagstar's challenges to the validity of Barnes's lien.

First, regarding the effect of the May 2, 2006, sworn statement, the trial court reasoned that a sworn statement is not a waiver of construction liens and that

if Flagstar wanted a waiver of all current and future claims, it could have asked for one. In fact, in light of Flagstar's original request for more "discovery" to find a subordina-

tion agreement in its files, it appears that Flagstar would not ordinarily rely on a sworn statement to assure it first priority.

The trial court also determined that the sworn statement substantially complied with the Construction Lien Act, despite the fact that it failed to exactly follow the statutory language that "the property is free from . . . the possibility of construction liens." MCL 570.1110(4).

Next, the trial court rejected the assertion that Barnes's lien was invalid because it referred to the metes and bounds description of the property rather than the unit descriptions as allegedly required by the Condominium Act, MCL 559.101 *et seq.* The trial court reasoned that MCL 570.1107 and MCL 570.1108 of the Construction Lien Act allowed for the use of the metes and bounds description and that the Condominium Act did not alter this.

The trial court likewise rejected Flagstar's assertion that Barnes's lien was not timely filed or that Barnes was required to file individual liens for each condominium unit to which work was furnished:

> Here, Star Heaven did not update its notice of commencement when it converted the project to condominiums and filed its master deed. Instead, it offered the entire property as security for the contractors' work. Thus, neither law nor equity compels this Court to reform the scope of the lien to attach only to the individual units. Accordingly, it is proper to attach the entire amount of [Barnes's] lien to the Assignee's interest with priority over Flagstar's interest.
>
> With respect to the 90-day limitations period, . . . it is undisputed that [Barnes] provided an "improvement" to the Property. There is no genuine issue of material fact that [Barnes] did so pursuant to a contract, of whatever nature. There is no dispute that [Barnes] filed its claim of lien

within 90 days of furnishing some labor or material to some part of the property. And as discussed above, the claim of lien properly referenced the metes and bounds description. Thus, if this case did not involve condominium units, based on the plain language of the statute, there would be no question that [Barnes] timely filed its construction lien. And because the lien attaches to the entire property in the notice of commencement, it does not change in this case. [Citations omitted.]

Having concluded that the full amount of Barnes's lien was valid, that the lien had priority over Flagstar's mortgage, and that the lien attached to Star Heaven's interest in the property (as then held by Findling as assignee), the trial court nevertheless determined that, because of the action pending before Judge Post, it lacked the authority to grant a judgment of foreclosure. Therefore, the trial court denied Barnes's motion for entry of a judgment of foreclosure.

Following entry of the trial court's order, Barnes moved for attorney fees under § 118(2) of the Construction Lien Act, MCL 570.1118(2), and sanctions under MCR 2.114 and MCR 2.625. Barnes stated that it had incurred attorney fees through July 29, 2010, in an amount exceeding $56,000. Additionally, Barnes observed that Flagstar had failed to disclose during discovery that it discharged its mortgage on March 23, 2010, depriving it of any interest in the property thereafter and that it had continued to argue that its now-discharged mortgage had priority over Barnes's lien. Barnes asserted that this position was frivolous and devoid of legal merit, thereby entitling it to sanctions.

Flagstar opposed Barnes's request for attorney fees and sanctions on the basis that an award of attorney fees was discretionary, and not mandatory, under the Construction Lien Act and that it "had a right to defend

this $360,000.00 lien claim recorded two years after the closing of the Flagstar mortgage. It had a right to receive and review [Barnes's] 'proof' of work done, the amounts claimed, and take [Barnes's] deposition." Flagstar also noted the novelty of the issues, which it described as "on the cutting edge of construction lien law right now." Because its defense of the action was justified, Flagstar urged the court to decline to award Barnes attorney fees. Flagstar further requested that if the trial court determined that an award of fees was appropriate, it require Barnes to produce itemized billings of the work performed in order to permit the court to properly evaluate the reasonableness of the fees claimed.

With regard to the request for sanctions, Flagstar explained that it was required to discharge its mortgage so that the property could be sold in the case brought by Findling and that its right to its appropriate share of the sale proceeds because of its mortgage was preserved by Judge Post in that action. Further, Flagstar asserted that Barnes never requested information through discovery that would have included the only very recent discharge of the mortgage.

After conducting a hearing on Barnes's motion for fees and sanctions, the trial court directed Barnes to provide more detailed invoices related to its requested attorney fees and costs. Barnes did so, Flagstar timely filed objections, and Barnes responded to those objections. On August 26, 2010, the trial court issued its opinion granting Barnes $32,460 in attorney fees but denying sanctions. The trial court found that Flagstar had unreasonably disputed the priority of Barnes's lien after Flagstar failed to find a subordination agreement by the February 18, 2010, deadline imposed by the court. The trial court also concluded that Flagstar's

subsequent motion to modify, amend, or vacate the court's order granting Barnes's motion for summary disposition "raised no issue that could not have been raised in the original response in opposition to summary disposition." Therefore, the trial court awarded Barnes reasonable attorney fees incurred after February 18, 2010, totaling $32,460. However, the trial court rejected Barnes's request for sanctions, finding that "[e]ven though Flagstar discharged its mortgage, it did not discharge the underlying obligation. It did not lose standing to assert [that] its claim had priority over [Barnes's] claim."

On August 27, 2010, the trial court entered judgment in favor of Barnes, declaring that Barnes's construction lien had priority over Star Heaven's mortgage to Flagstar and that it was "valid for the full amount claimed of $360,909.11 and attorney fees in the amount of $32,460." Thereafter, proceedings were stayed pending resolution of this appeal to this Court.

## II. MOOTNESS

As a threshold matter, we note that Barnes argues that the instant appeal is moot because Flagstar discharged its mortgage during the pendency of these proceedings. Barnes correctly observes that an issue becomes moot when an event occurs that renders it impossible for the reviewing court to grant relief. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 472; 761 NW2d 846 (2008). However, contrary to Barnes's assertions, because of the circumstances presented here, Flagstar's claim to the proceeds of the sale was not rendered moot by the discharge of its mortgage as a part of the judicially approved sale of the property in the action brought by Findling before Judge Post. As Barnes indicates, under Judge Post's supervision, Fin-

dling sold the property for $4.5 million. As a condition of that sale, Flagstar executed a discharge of its mortgage so that Findling could convey clear title to the purchaser, and $375,000 from the sale was placed in escrow pending resolution of the priority dispute presented in the instant action. Whether Barnes or Flagstar is entitled to receipt of those funds is solely dependent on whether Barnes's construction lien has priority or whether Flagstar's mortgage has priority. Accordingly, under the circumstances here presented, Flagstar's discharge of its mortgage did not render the instant appeal moot or otherwise deprive Flagstar of standing to challenge the trial court's orders.

### III. VALIDITY OF CLAIMS OF LIEN

#### A

This Court reviews a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). When reviewing a decision on a motion brought under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court must consider all the substantively admissible evidence submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This Court also reviews issues of statutory interpretation de novo. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). The primary goal of judicial inter-

pretation of statutes is to discern the intent of the Legislature by examining the plain language of the statute. *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). The starting point in every case involving construction of a statute is the language itself. *House Speaker v State Admin Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). "Each word of a statute is presumed to be used for a purpose, and, as far as possible, effect must be given to every clause and sentence." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000). If the statutory language is clear and unambiguous, the court must apply the statute as written, and judicial construction is neither necessary nor permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999); *Gebhardt v O'Rourke*, 444 Mich 535, 541-542; 510 NW2d 900 (1994). The court must consider the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purposes of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). "Also, it is a settled rule of statutory construction that where a statute contains a specific statutory provision and a related, but more general, provision, the specific one controls." *In re Haley*, 476 Mich 180, 198; 720 NW2d 246 (2006), citing *Gebhardt*, 444 Mich at 542-543.

B

Flagstar first argues that Barnes's claims of lien are ineffective because they described the subject property by metes and bounds instead of as individual condominium units. We disagree.

Barnes relies on §§ 107 and 108 of the Construction Lien Act, MCL 570.1107 and MCL 570.1108, to assert

that it properly filed its claims of lien using the metes and bounds property descriptions set forth in the notice of commencement filed by Star Heaven.

The Construction Lien Act "control[s] all rights to a construction lien arising from any project" for which a contract was first entered into after certain dates in 1982. MCL 570.1301(1) and (3). Section 107 of the Construction Lien Act provides in relevant part:

> (1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, *as described in the notice of commencement* given under [MCL 570.1108 or MCL 570.1108a], the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract.
>
> (2) A construction lien under this act *attaches to the entire interest of the owner or lessee who contracted for the improvement*, including any subsequently acquired legal or equitable interest. [MCL 570.1107 (emphasis added).]

And relating to the notice of commencement, § 108 of the Construction Lien Act provides in relevant part:

> (1) Before the commencement of any actual physical improvements to real property, the owner or lessee contracting for the improvements shall record in the office of the register of deeds for each county in which the real property to be improved is located a notice of commencement, in the form set forth in this section. *If all improvements relate to a single project only 1 notice of commencement need be recorded*. A subsequent notice of commencement need not be recorded for an improvement to any real property which currently has a notice of commencement recorded in the office of the register of

deeds if that recorded notice of commencement contains the same information as the subsequent notice of commencement.

(2) The notice of commencement shall contain the following information:

(a) *The legal description of the real property on which the improvement is to be made....*

\* \* \*

(f) The following statement:

"To lien claimants and subsequent purchasers:

Take notice that work is about to commence on an improvement to the real property described in this instrument. A person having a construction lien may preserve the lien by providing a notice of furnishing to the above named designee and the general contractor, if any, and by timely recording a claim of lien, in accordance with law.

A person having a construction lien arising by virtue of work performed on this improvement should refer to the name of the owner or lessee and the legal description *appearing in this notice.* A person subsequently acquiring an interest in the land described is not required to be named in a claim of lien.

A copy of this notice with an attached form for notice of furnishing may be obtained upon making a written request by certified mail to the above named owner or lessee; the designee; or the person with whom you have contracted." [MCL 570.1108 (emphasis added).]

Further, § 111 of the Construction Lien Act describes the form of a valid claim of lien. In this section, the property is to be described by using the "legal description of real property from notice of commencement." MCL 570.1111(2).

Flagstar, on the other hand, argues that despite those provisions, § 126 of the Construction Lien Act, MCL 570.1126, and §§ 61 and 132 of the Condominium Act,

MCL 559.161 and MCL 559.232, required Barnes to file separate liens against each individual condominium unit for work performed on that unit and precluded Barnes from filing a lien against the entire project.

Sections 126 of the Construction Lien Act and 132 of the Condominium Act both provide that a construction lien for an improvement furnished to a condominium unit attaches only to the condominium unit to which the improvement was furnished. MCL 570.1126(1); MCL 559.232.

Additionally, § 61 of the Condominium Act provides:

> Upon the establishment of a condominium project *each condominium unit*, together with and inseparable from its appurtenant share of the common elements, *shall be a sole property subject to* ownership, mortgaging, taxation, possession, sale, and *all types of juridical acts*, inter vivos or causa mortis *independent of the other condominium units*. [MCL 559.161 (emphasis added).]

As defined by the condominium act, the "condominium unit" is "that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed." MCL 559.104(3).

As this Court recently reaffirmed in *Stock Bldg Supply, LLC v Parsley Homes of Mazuchet Harbor, LLC*, 291 Mich App 403, 406-407; 804 NW2d 898 (2011):

> The Construction Lien Act is a remedial statute that sets forth a comprehensive scheme aimed at protecting "the rights of lien claimants to payment for expenses and . . . the rights of property owners from paying twice for these expenses." It is to be liberally construed "to secure the beneficial results, intents, and purposes" of the act. MCL 570.1302(1). [Citations omitted.]

The Legislature has specified that because the Construction Lien Act is a remedial statute, "[s]ubstantial compliance with the provisions of this act shall be

sufficient for the validity of the construction liens provided for in this act." MCL 570.1302(1); see also *Big L Corp v Courtland Constr Co*, 482 Mich 1090 (2008).

The unambiguous, plain language of §§ 107(1) and 111(2) of the Construction Lien Act required that Barnes's claims of lien refer to the legal description set forth in the notice of commencement filed by Star Heaven. It is undisputed that the notice of commencement used a metes and bounds description for the entire property. Thus, the form of Barnes's liens, using the metes and bounds descriptions, substantially complied with the Construction Lien Act in this regard.

Having determined that the requirements for a valid lien were met under the Construction Lien Act, the question then becomes, upon the filing of the master deed *after* the notice of commencement was filed, which redefined the project as a condominium project, whether Barnes was required by § 132 of the Condominium Act to file separate liens against each individual condominium unit within the project. As discussed below, we conclude that the statute does not require such individual filings.

At issue is the interplay between the Construction Lien Act and the Condominium Act. Section 126 of the Construction Lien Act, MCL 570.1126, and § 132 of the Condominium Act, MCL 559.232, provide that a construction lien for work performed on a condominium unit or for an improvement furnished to a condominium unit attaches only to the condominium unit on which the work was performed or for which the improvement was furnished.

Generally, "pursuant to MCL 570.1119(3), a construction lien that arises under the [Construction Lien Act] takes effect upon the first actual physical improvement to the property and has priority over all interests

recorded after the first actual physical improvement," and this Court has "further held that liens relate back to the first actual physical improvement regardless of the time when, or the person by whom, the particular work was done or the materials furnished for which a lien is claimed." *Jeddo Drywall, Inc v Cambridge Investment Group, Inc*, 293 Mich App 446, 452-453; 810 NW2d 633 (2011) (citations and quotation marks omitted); see also *M D Marinich, Inc v Mich Nat'l Bank*, 193 Mich App 447, 454; 484 NW2d 738 (1992).

At the time that Barnes performed its first actual physical improvement to the property, under the notice of commencement, Star Heaven had yet to record the master deed designating the project as a condominium project or identifying condominium unit numbers. Consequently, from the outset, Barnes was providing material and labor to a construction project as defined by the metes and bounds description set forth in the notice of commencement; Barnes was not providing labor or material to a "condominium unit" as contemplated by § 126 of the Construction Lien Act and § 132 of the Condominium Act. Considering the importance placed on the date of first actual improvement in determining the priority of construction liens, MCL 570.1119(3), we conclude that at the time Barnes's lien arose under the Construction Lien Act, the work performed was not "performed upon a condominium unit," so as to invoke the requirement that Barnes file separate liens on each condominium unit under § 132 of the Condominium Act. As a result, we hold that Barnes's claims of lien were valid and that the lien was entitled to priority over Flagstar's mortgage interest. Importantly, Star Heaven did not record a master deed for the condominium project until May 2006, *after* Barnes began working on the project in August 2005.

Flagstar offers this Court no authority requiring that, under these circumstances, Barnes was required by virtue of the subsequently filed master deed to file separate liens against individual condominium units. Barnes had potential liens arising from the date it began the project, and the Construction Lien Act undisputedly controlled at that time. Our holding is consistent with the purpose of the Construction Lien Act, which "is designed to protect the rights of lien claimants to payment for expenses and to protect the rights of property owners from paying twice for these expenses." *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 373-374; 652 NW2d 474 (2002). Consequently, the trial court did not err when it similarly found that Barnes's claims of lien were valid and had priority over Flagstar's interest.

We further observe that to hold otherwise would require a contractor who begins work on a non-condominium project, under a notice of commencement setting forth a metes and bounds description of the property to be improved, to be hypervigilant about whether at any point during the course of construction the property owner converts the project to a condominium project and then, if the owner does so, to file any liens for work performed before the conversion in accordance with the notice of commencement as required by § 108 of the Construction Lien Act and file separate liens for work performed after the conversion with respect to each condominium unit under § 126 of the Construction Lien Act and § 132 of the Condominium Act. This result runs counter to both the principle that a construction lien arises under the Construction Lien Act as of the date of first actual physical improvement to the property and the remedial purpose of the Construction Lien Act itself.

C

Flagstar next argues that the trial court erred when it determined that the May 2, 2006, sworn statement substantially complied with the statutory requirements. We disagree.

As this Court explained in *Big L Corp v Courtland Constr Co*, 278 Mich App 438, 441-442; 750 NW2d 628 (2008), vacated in part on other grounds 482 Mich 1090 (2008):

> The [Construction Lien Act] . . . provides owners with information by requiring general contractors to make sworn statements itemizing their bills. A sworn statement notifies the owner of each subcontractor, supplier, and laborer with whom the general contractor contracted. Thus, the owner can rely on a sworn statement as a comprehensive list of potential lien claimants. The purpose of a sworn statement is to enable the [owner] to retain out of any money due or to become due to the contractor an amount sufficient to pay the subcontractors, suppliers and laborers. [Citations and quotation marks omitted.]

In addition to the general provision of the Construction Lien Act, MCL 570.1302(1), only requiring substantial compliance with the act's provisions, MCL 570.1110(4) explicitly requires that sworn statements be in "substantially" the form set forth in the statute:

> Pursuant to the statute's exemplar form, the sworn statement must list: (1) the name of each subcontractor, supplier, and laborer with whom the general contractor contracted; (2) the type of improvement furnished by each; (3) the total contract price; (4) the amount already paid to each; and (5) the amount currently owing to each. It must also be subscribed and sworn to before a notary public. [*Big L*, 278 Mich App at 442, citing MCL 570.1110(4).]

The exemplar form advises the owner that the information provided is

a statement of each subcontractor and supplier, and laborer for whom payment of wages or fringe benefits and withholdings is due but unpaid, with whom the (contractor) (subcontractor) has (contracted) (subcontracted) for performance under the contract with the owner or lessee of the property, and the amounts due to the persons as of the date of this statement . . . . [MCL 570.1110(4).]

Additionally, the exemplar form sets forth the following attestation by the contractor or subcontractor issuing the statement:

I make this statement as the (contractor) (subcontractor) or as . . . . . . . . . of the (contractor) (subcontractor) to represent to the owner or lessee of the property and his or her agents that the property is free from claims of construction liens, *or the possibility of construction liens,* except as specifically set forth in this statement and except for claims of construction liens by laborers that may be provided under section 109 of the construction lien act, 1980 PA 497, MCL 570.1109. [*Id.* (emphasis added).]

Flagstar argues that the May 2, 2006, sworn statement from Barnes, in which Barnes represented that the property was "free from claims of construction liens," but did not state that it was "free from the *possibility* of construction liens" did not substantially comply with the Construction Lien Act. Flagstar asserts further that "[s]ince an invalid Sworn Statement was provided here, there is no Sworn Statement," which results in Barnes's claims of lien being invalid.

Addressing Flagstar's second assertion first, § 110(9) of the Construction Lien Act provides that

[i]f a contractor fails to provide a sworn statement to the owner or lessee before recording the contractor's claim of lien, the contractor's construction lien is not invalid. However, the contractor is not entitled to any payment, and a complaint, cross-claim, or counterclaim may not be filed to

> enforce the construction lien, until the sworn statement has been provided. [MCL 570.1110(9).]

It is not disputed that Barnes provided a sworn statement, reflecting unpaid amounts owing, in advance of instituting the instant action. Thus, even if the May 2, 2006, sworn statement was deemed to constitute a failure to provide a sworn statement, contrary to Flagstar's position, Barnes's lien remained valid and enforceable.

Moreover, we conclude that Barnes's May 2, 2006, sworn statement did substantially comply with the statute. Flagstar does not assert that the sworn statement failed to advise Star Heaven of the name of each subcontractor, supplier, and laborer with whom Barnes had contracted; the improvement furnished by each such subcontractor, supplier, or laborer; the total contract price for those improvements; or the amount paid and remaining owing to each such subcontractor, supplier, or laborer. Flagstar also takes no issue with the accuracy of Barnes's sworn statement. Instead, Flagstar asserts only that the omission of the "possibility" language from the sworn statement was material. Considering that the purpose to be served by a sworn statement is to advise the owner of outstanding amounts owed to contractors, subcontractors, or laborers who might have a lien on property *as of the date of the statement* so as to permit the property owner to retain out of payment to the general contractor any money owed to subcontractors or laborers, *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 399 n 5; 594 NW2d 81 (1999), we reject Flagstar's position and conclude that the sworn statement substantially complied with the requirements of MCL 570.1110(4). See *Big L*, 278 Mich App at 443-444 (stating that an unverified sworn statement substantially complied with MCL 570.1110(4)

because the owner had notice of its substance); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 510-511; 667 NW2d 379 (2003) (stating that an unverified sworn statement substantially complied with the notice requirement of former MCL 570.1110(8) because the owner had notice of its substance).

### IV. LIMITATION OF CLAIMS OF LIEN

#### A

Flagstar argues that the trial court erred by refusing to limit Barnes's claims of lien to work and material actually provided to each unit within 90 days of the filing of the claims of lien. We disagree.

As noted earlier, § 107(1) of the Construction Lien Act states that a contractor who provides an improvement[1] to real property has a construction lien on the interest of the owner who contracted for the improvement to the real property, "as described in the notice of commencement." MCL 570.1107(1). However, § 111(1) declares that "a construction lien created by this act shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material for the improvement, *pursuant to the lien claimant's contract*, a claim of lien is recorded . . . ." MCL 570.1111(1) (emphasis added). Further, § 111(2) of the Construction Lien Act provides that a claim of lien is to identify the

---

[1] Section 104 of the Construction Lien Act defines "improvement" as

the result of labor or material provided by a contractor, subcontractor, supplier, or laborer, including, but not limited to, surveying, engineering and architectural planning, construction management, clearing, demolishing, excavating, filling, building, erecting, constructing, altering, repairing, ornamenting, landscaping, paving, leasing equipment, or installing or affixing a fixture or material, *pursuant to a contract*. [MCL 570.1104(5) (emphasis added).]

legal description of the property against which the lien is claimed, *as set forth in the notice of commencement.* MCL 570.1111(2). But § 126 of the Construction Lien Act, MCL 570.1126, and § 132 of the Condominium Act, MCL 559.232, each declare that construction liens attach only to the individual condominium unit to which improvements were made.

Examining the pertinent language of each these statutory provisions, we first observe that a claimant must file its lien no later than[2] 90 days from the last date of furnishing labor or material, *pursuant to the lien claimant's contract.* Because the time within which a claim of lien is to be filed is determined by reference to the contract under which the labor or material was provided, the contract necessarily defines the scope of the improvement for which the lien (if timely filed) exists. MCL 570.1107; MCL 570.1111(1); MCL 570.1114.

It is undisputed that there was no written contract between Barnes and Star Heaven delineating the scope of the improvement to which Barnes was contributing its labor and material. However, the Construction Lien Act does not require a written contract; it permits a contract "of whatever nature." MCL 570.1103(4).[3] All the evidence presented below indicated that Barnes was retained, on a time-and-materials basis, to serve as the

---

[2] Our Supreme Court has clarified that the Construction Lien Act's allowing of substantial compliance does not apply to this requirement. Instead, the 90-day window is a certain deadline that must be met in order for a claimant to successfully maintain a construction lien. *Northern Concrete Pipe, Inc v Sinacola Companies-Midwest, Inc*, 461 Mich 316, 322-323; 603 NW2d 257 (1999).

[3] Section 103 of the Construction Lien Act defines "contract" as "a contract, of whatever nature, for the providing of improvements to real property, including any and all additions to, deletions from, and amendments to the contract." MCL 570.1103(4).

general contractor for the entire project being undertaken at the property by Star Heaven. Thus, "the improvement" to which Barnes was supplying its labor and material was in furtherance of *the entire project*. We emphasize that the circumstances of the instant case differ from instances in which the parties contract on a unit-by-unit basis. There being no dispute, however, that Barnes's claims of lien were filed within 90 days of its last provision of labor or materials to the project as contemplated in the contract, we hold that the trial court did not err by concluding that Barnes's claims of lien were timely filed and encompassed the entire project—and not just each unit that received labor and material within 90 days of the filing of the claims of lien—since the entire project was the subject of the contract and it was this property that was listed in the notice of commencement.

B

Flagstar next argues that the trial court erred by failing to reduce the amount of the lien for work and materials provided to units that were subsequently sold. We disagree.

Again, § 107(2) of the Construction Lien Act specifies that a construction lien "attaches *to the entire interest of the owner* ... who contracted for the *improvement*, including any subsequently acquired legal or equitable interest." MCL 570.1107(2). Star Heaven contracted for the improvements—the materials and labor—that Barnes provided to the property, and Star Heaven did so as part of a single project. Plainly, then, under § 107(2) of the Construction Lien Act, Barnes's lien attached to the entire interest of Star Heaven in the property as described in the notice of commencement. And, in its notice of commencement, Star Heaven described the

property to which the improvement was being undertaken with a metes and bounds description outlining the entire project. It thus exposed the entire project to the possibility of a lien for payment for work performed.

Flagstar maintains that because of § 126 of the Construction Lien Act and § 132 of the Condominium Act, the unpaid amounts attributable to work performed on condominium units since sold by Star Heaven should be apportioned from the lien amount enforceable against the remaining Star Heaven property. However, MCL 570.1126(1)(a) addresses a construction lien "for an *improvement* furnished to a condominium unit" and provides that the lien "shall attach only to the condominium unit to which *the improvement* was furnished." (Emphasis added.) MCL 559.232(a) provides a similar limitation for "work" performed on a condominium unit. But as discussed in part IV(A) of this opinion, the scope of an "improvement" is defined by the contract. Because the contract addressed furnishing material and labor to the *entire project*, rather than individual condominium units, the complete unpaid amount of Barnes's lien attached to the entire remaining interest of Star Heaven. As a result, the trial court did not err by permitting Barnes to satisfy its lien out of the proceeds of the sale of Star Heaven's remaining interest in the property.

### V. FLAGSTAR'S MOTION TO AMEND, VACATE, OR MODIFY

Flagstar next argues that the trial court erred when it denied its motion to amend, vacate, or modify the court's prior order granting Barnes's motion for summary disposition. We disagree.

This Court reviews both a trial court's decision whether to set aside a prior order or judgment under MCR 2.612(C)(1) and a trial court's decision regarding

a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000); *Heugel v Heugel*, 237 Mich App 471, 478; 603 NW2d 121 (1999). Accordingly, those decisions will only be reversed if they fall outside the range of principled outcomes. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008).

Flagstar asserts on appeal that the trial court's order granting Barnes partial summary disposition with regard to priority was premature because discovery remained open and, further, relief from that order was warranted under MCL 2.612(C)(1)(f).[4] Concerning Flagstar's first argument, while we agree that the granting of summary disposition can be premature when discovery is ongoing,

> the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate. *The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position. [Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009) (emphasis added).]

At the January 18, 2010, hearing on Barnes's motion for partial summary disposition, Flagstar represented to the trial court that it needed additional time to locate a subordination agreement, which it believed would have been executed in conjunction with the closing of its loan to Star Heaven. Flagstar did not identify any other discovery it believed pertinent to its defense. Despite granting Barnes's motion, the trial court afforded Flagstar an additional 30 days to locate the agreement.

---

[4] MCR 2.612(C)(1)(f) permits a court to relieve a party from an order for "[a]ny other reason justifying [such] relief."

Flagstar did not, and does not, complain that this amount of time was insufficient. Flagstar does not assert that it needed additional time or that more time would have resulted in it locating additional documentation supporting its position. It merely asserts that the trial court should have waited until the close of discovery to rule on Barnes's motion. Therefore, because Flagstar has failed to establish that discovery stood a fair chance of uncovering additional facts to support its position, the trial court's decision to grant Barnes's motion for partial summary disposition was not premature.

Further, to the extent that Flagstar's argument is premised on MCR 2.116(C)(1)(f), we conclude that Flagstar has not established "[a]ny other reason justifying relief" from the trial court's order. Instead, as discussed earlier, the trial court properly determined that Barnes's claim of lien was valid and was timely filed, that the entire amount of that claim was enforceable against Star Heaven's interest in the property, and that the primacy of Barnes's lien was not affected by the May 2, 2006, sworn statement.

MCR 2.612(C)(1) provides:

> On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect.
>
> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).
>
> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
>
> (d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

As this Court explained in *Heugel*, 237 Mich App at 478-479:

In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) *extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice.* Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. [Citations omitted; emphasis added.]

Assuming arguendo that the first two requirements were met, there is no extraordinary circumstance present in this case and no allegation that the trial court's order was obtained as a result of improper conduct by Barnes. Thus, Flagstar fails to show any justification to set aside the trial court's order under MCR 2.116(C)(1)(f), and the trial court did not abuse its discretion by denying Flagstar relief from the prior order under that court rule.

Finally, Flagstar asserts that there were additional questions of fact about the validity and amount of Barnes's lien for resolution by the trial court. However, Flagstar does not specifically identify any such questions. Rather, Flagstar simply asserts that the trial court failed to give appropriate effect to the May 2, 2006, sworn statement as related to the issue of priority. Moreover, as the trial court concluded, Flagstar's mo-

tion to vacate, amend, or modify the prior order of the trial court was essentially a motion for reconsideration. Flagstar's motion was premised on the existence of the sworn statement. However, Flagstar did not assert that the sworn statement constituted newly discovered evidence, and even had it done so, a trial court properly denies a motion for reconsideration when, as was the case here, the evidence offered in support of the motion could have, with reasonable diligence, been produced at the time the court made it initial ruling. *Churchman*, 240 Mich App at 233. Therefore, we hold that the trial court did not abuse its discretion by denying Flagstar's motion to amend, vacate, or modify the prior order granting Barnes's motion for partial summary disposition with regard to the priority of its lien.

## VI. ATTORNEY FEES

Flagstar last argues that the trial court erred when it awarded attorney fees under the Construction Lien Act. We disagree.

This Court reviews a trial court's decision to award attorney fees under the Construction Lien Act for an abuse of discretion. *Solution Source*, 252 Mich App at 381. Any attendant findings of fact are reviewed for clear error. *Id.* Findings are clearly erroneous when, although there is evidence to support them, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made. *Id.* at 381-382.

Section 118(2) of the Construction Lien Act, MCL 570.1118(2) provides that "[t]he court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party." The word "may" denotes permissive and not mandatory action. *AFSCME v Detroit*, 267

Mich App 255, 260; 704 NW2d 712 (2005). Thus, the award of attorney fees to Barnes was discretionary with the trial court.

The trial court considered the complexity of the case, the validity of Flagstar's position, the amount and purpose of the fees charged, and the results obtained. It determined that Barnes was not entitled to any fees for prosecuting this action to enforce its lien up to, and through, the granting of its motion for partial summary disposition with regard to the first priority of its lien, noting that

> it was reasonable for Flagstar and the other defendants to contest the validity and priority of [Barnes's] lien and complete discovery in this case. It was reasonable to require that [Barnes] obtain the Court's decision on priority by filing its motion for summary disposition, and it was not unreasonable to ask this Court for a little more time to find a subrogation [sic: subordination] agreement. Accordingly, defendants had a legitimate reason to litigate the issue until after the hearing for summary disposition and the allotted time to file a motion to set aside the summary disposition order passed (until February 18, 2010).

It concluded, however, that Flagstar's continued litigation of the issue of the priority of Barnes's lien, in the absence of any subordination agreement elevating the Flagstar mortgage over the Barnes lien, became unreasonable and warranted an award of attorney fees, "particularly when the subsequent motion raised no issue that could not have been raised in the original response in opposition to summary disposition."

Flagstar does not challenge the trial court's evaluation of the complexity of the case. It instead argues that its defense of the action was justified, asserting that it "had an absolute right (even if the [trial court's] priority order was appropriate) to thereafter examine and challenge the lien based upon its invalidity and

amount." But Flagstar fails to recognize that the only requirement for a claimant to receive attorney fees under the Construction Lien Act is to be the prevailing party. *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119, 133; 560 NW2d 43 (1997), citing MCL 570.1118(2). In the present case, the trial court correctly determined that Barnes was the prevailing lien claimant; no more was required to permit the trial court to exercise its discretion to award Barnes its attorney fees under the Construction Lien Act. Therefore, the trial court did not abuse its discretion by awarding Barnes reasonable attorney fees.

The trial court did err, however, by combining the awarded attorney fees with the amount of the construction lien. The judgment stated that Barnes's construction lien had priority over Flagstar's mortgage interest and that *the lien* was "valid for the full amount claimed of $360,909.11 *and* attorney fees in the amount of $32,460." (Emphasis added.) MCL 570.1118(2), which authorizes the award of attorney fees to a lien claimant as long as it was the prevailing party, does not address whether the attorney fees should be included in or excluded from the lien claimant's entitlement under the construction lien.

MCL 570.1107(1) states that "[a] construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract." The word "shall" in a statute denotes mandatory action. *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 409; 716 NW2d 236 (2006). Thus, examining the plain language of the statute, as this Court is required to do, *Driver*, 490 Mich at 246-247, we conclude that MCL 570.1107(1) mandates that the amount of any construction lien not exceed the amount the property owner owes on the

contract with the claimant. Adding an amount of attorney fees to the unpaid amount of the contract would, as a matter of mathematical certainty, result in a total lien amount necessarily higher than allowed by law. Thus, because the statute expressly states that the amount of the lien is limited to the amount owed for the work performed, we hold that the award of attorney fees is not properly added to the amount of a construction lien, but must instead be awarded by way of a judgment separate from the lien itself.

Flagstar alternatively argues that if an attorney fee award is proper, any such award should be included in a judgment against "the contracting party"—that is, against Star Heaven. However, Star Heaven did not contest Barnes's lien, and Barnes did not prevail against Star Heaven. Rather, for purposes of the trial court's award of attorney fees, Barnes prevailed against Flagstar, the awarded attorney fees are properly attributable to conduct by Flagstar, and the attorney fee award is properly enforced by way of judgment against Flagstar, not Star Heaven.

Since the attorney fees are to be enforced on remand through a judgment *against Flagstar*, we agree with Flagstar's assertion that it was improper to award attorney fees for work that was not related to Flagstar. The trial court concluded that, because all the proceedings after February 18, 2010, involved the enforcement of Barnes's construction lien, to be paid from the proceeds of the sale of the remainder of Star Heaven's interest in the property, it did not need to apportion the fees among the various defendants to the action. However, as discussed, because those awards are to be enforced through a judgment against a particular party, it is not reasonable to have that party pay for attorney fees that were incurred for work associated with other

parties. Thus, on remand, the trial court is to assess attorney fees only for work related to Flagstar's contest of Barnes' lien.

## VII. CONCLUSION

We affirm in part, reverse in part, and remand. We affirm the validity and priority of Barnes's construction lien. However, on remand, the trial court is to remove the award of attorney fees to Barnes from the construction lien and enter a separate judgment awarding attorney fees to Barnes against Flagstar. Further, the trial court is to award only the amount of the attorney fees that were incurred as a result of work attributable to Flagstar's actions after February 18, 2010. We do not retain jurisdiction. No costs are taxable pursuant to MCR 7.219, neither party having prevailed in full.

O'CONNELL and K. F. KELLY, JJ., concurred with WILDER, P.J.