*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANN LAMKIN,

       Plaintiff-Appellant,

v

HAMBURG TOWNSHIP BOARD OF TRUSTEES,
and HAMBURG TOWNSHIP ZONING
ADMINISTRATOR,

       Defendants-Appellees.

UNPUBLISHED
November 19, 2020

No. 347064
Livingston Circuit Court
LC No. 15-028656-CZ

MARY ANN LAMKIN,

       Plaintiff-Appellee,

v

HAMBURG TOWNSHIP BOARD OF TRUSTEES,
and HAMBURG TOWNSHIP ZONING
ADMINISTRATOR,

       Defendants-Appellants.

No. 347744
Livingston Circuit Court
LC No. 15-028656-CZ

Before: JANSEN, P.J., and FORT HOOD and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 347064, plaintiff, Mary Ann Lamkin, appeals by right the trial court's order entering a judgment of no cause of action issued in favor of defendants, Hamburg Township Board of Trustees and Hamburg Township Zoning Administrator. In Docket No. 347744, defendants appeal by right the trial court's order denying their motion for sanctions, costs, and attorney fees.

This Court consolidated the appeals.[1]  In Docket No. 347064, we affirm.  In Docket No. 347744, we vacate and remand.

## I.  BACKGROUND

The instant matter is the latest battle in plaintiff's decades-long struggle with her neighbors and elected officials in Hamburg Township, Livingston County, regarding the use of plaintiff's and her neighbors' properties on the northern shore of Oneida Lake.[2]  This particular dispute involves plaintiff's contention that one of her neighbors, Doug Braidwood, is operating an industrial business on his property (the "Braidwood Property") in contravention of applicable zoning ordinances.  Many of the properties on the northern shore of Oneida Lake, including plaintiff's property and the Braidwood Property, are only accessible from a public road, M-36, by way of a private road called Island Shore Drive.  Some prior litigation has involved various property owners' use of the portion of Island Shore Drive that crosses plaintiff's property.  In contrast, the Braidwood Property is closer to M-36 than is plaintiff's property.  Thus, although the Braidwood Property is only accessible via Island Shore Drive, in which plaintiff claims an interest, there is no issue in this case involving the use of Island Shore Drive across plaintiff's property.  Rather, plaintiff seeks to compel defendants to enforce the Hamburg Township zoning ordinance as she construes it and to abate what she believes to be Braidwood's violation of the ordinance and creation of a nuisance per se.

Plaintiff, *in propria persona*, filed a complaint against defendants, seeking a writ of mandamus, an order of superintending control,[3] and an order to show cause.  The trial court sua sponte dismissed plaintiff's complaint before it was served, and plaintiff appealed.  On appeal, a majority of this Court reversed the trial court's dismissal without having afforded plaintiff advance notice, an opportunity to be heard, and a reviewable record.  *Lamkin v Hamburg Twp Bd of*

---

[1] *Mary Ann Lamkin v Hamburg Twp Bd of Trustees*, unpublished order of the Court of Appeals, entered March 1, 2019 (Docket No.347744).

[2] We take judicial notice of this Court's own records.  See *In re Albert*, 383 Mich 722, 724; 179 NW2d 20 (1970).  In this case, we do so primarily for background purposes, and we emphasize that plaintiff has in fact prevailed in a number of instances.  See, e.g., *Glazer v Lamkin*, 201 Mich App 432; 506 NW2d 570 (1993).  Conversely, some of plaintiff's efforts resulted in criminal charges or convictions.  See, e.g., *People v Lamkin*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2013 (Docket No. 308695).

[3] Plaintiff has since conceded that superintending control is not an appropriately available form of relief.  Even if plaintiff were not bound by that admission, see *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001), we would agree.  An order of superintending control is functionally indistinguishable from a writ of mandamus, both being for the purpose of compelling the performance of a clear legal duty, but superintending control is directed to a lower court or tribunal rather than to an official.  See *In re Payne*, 444 Mich 679, 687-689; 514 NW2d 121 (1994); *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 679-681; 194 NW2d 693 (1972).  We will therefore not entertain plaintiff's arguments to the effect that the trial court erred by focusing on her request for mandamus to the exclusion of her request for superintending control.

*Trustees* (*Lamkin I*), 318 Mich App 546, 549-552 (GLEICHER, J.), 552-553 (O'CONNELL, J., concurring); 899 NW2d 408 (2017). The third judge dissented from the majority's reasoning, and concurred in the result on alternative grounds that the trial court might have improperly precluded plaintiff from moving for reconsideration, and would have only granted a narrow remand to determine whether such a preclusion had actually occurred. *Lamkin I*, 318 Mich App at 553-557 (RONAYNE KRAUSE, P.J., concurring in part and dissenting in part). On August 21, 2017, the trial court reopened the proceedings.

Shortly thereafter, plaintiff moved to disqualify the trial judge, Judge Michael P. Hatty, who had presided over a number of plaintiff's prior legal proceedings, under MCR 2.003(C)(1)(a) and (b); and she requested an evidentiary hearing. Plaintiff argued that Judge Hatty was prejudiced against her based on his prior rulings against her and "threatening" statements made during a May 18, 2017 status conference (apparently related to a separate action). Judge Hatty concluded that he had no bias against plaintiff and denied plaintiff's motion to disqualify. Plaintiff filed a motion for reconsideration regarding her motion to disqualify, which was also denied. During the de novo hearing before Chief Judge David J. Reader, plaintiff requested that Judge Reader recuse himself. Plaintiff's motion for the disqualification of Judge Reader was denied. However, the case was referred to the Michigan State Court Administrative Office for judicial reassignment. In November 2017, plaintiff filed a motion for a rehearing for correction of errors in the order entered after the de novo review for disqualification of Judge Hatty. In January 2018, Judge Janelle A. Lawless, on assignment from the State Court Administrative Office, denied plaintiff's motion to recuse Chief Judge Reader. In March 2018, Judge Susan Beebe Jordan entered an order denying plaintiff's motion for disqualification of Judge Hatty.

In December 2018, a bench trial was held before Judge Hatty. Plaintiff, *in propria persona*, explained that her action was, at least in part, to establish that the Hamburg Township government was corrupt, and she noted that she had "been probably their worst nightmare because I have been politically active to bring forth all of the complaints that I have had about this government for over 40 years," and this action was her first opportunity to prove that corruption. She explained that her theory of the case was that the various Township officials had a pattern of acting in concert with each other to selectively enforce or ignore ordinances "based on political motivation." Much of her attempted testimony and examination consisted of similar opinions or arguments, and she frequently veered off into legally irrelevant matters that she believed were relevant to her desire to prove the abovementioned corruption. The trial court, in a tremendous display of patience, repeatedly explained to plaintiff that she was required to stay focused on the allegations in her complaint, and that she was not permitted to make an argument while she was testifying as a witness or asking questions of a witness. Plaintiff's testimony is, as a consequence, difficult to follow.[4]

---

[4] In her brief, plaintiff characterizes the bench trial as "chaotic." We do not think that is a fair reading of the transcripts of the trial, but to the extent it was confusing, that was solely due to plaintiff's own obvious lack of understanding of how to question witnesses; or the difference between facts, arguments, and opinions. We similarly note that plaintiff's presentation of facts in her brief grossly contravenes the requirement under MCR 7.212(C)(6) that the facts "must be

In any event, plaintiff testified that on April 23, 2015, the Hamburg Township Zoning Administrator, Scott Pacheco, had approved "a land use permit application for a home occupation permit" that had been submitted by Braidwood. Plaintiff met with Pacheco and wrote a letter to him, protesting that Braidwood was seeking to use his home for purposes of his sealcoating business, parking commercial vehicles, and using his propane tank for commercial purposes. Plaintiff provided several letters sent by Pacheco. The first, dated May 27, 2015, was in response to plaintiff; it agreed that storage of vehicles was not "home occupation," but opined that parking vehicles was not prohibited under the Township's ordinances. The letter also promised to advise Braidwood that the propane tank must be used only for residential purposes. Finally, the letter apparently included an application form so that plaintiff could, if she wished, seek to have the zoning ordinance amended to include regulations on parking and storage of commercial vehicles. Plaintiff declined the latter invitation because she believed she did not need to.

On June 8, 2015, Pacheco sent a letter to Braidwood stating that he had been advised that Braidwood was operating a commercial business on his property, including storage of materials and fuel for the business operation and having employees pick up and drop off vehicles. Pacheco warned that such commercial uses were not permitted, and he directed Braidwood to cease any commercial activities immediately. On July 25, 2015, Pacheco wrote another letter to Braidwood memorializing that he and the Township Supervisor had met with Braidwood and satisfied themselves that Braidwood was not operating his business from the Braidwood Property, but rather was permissibly parking his personally-owned commercial vehicles. That letter also memorialized that Braidwood had erected an unpermitted accessory structure that Braidwood had pledged to remove.[5] Pacheco's letter concluded that Braidwood was not in violation of Township regulations.

Plaintiff found Pacheco's response unsatisfactory. She urged Pacheco to conduct a personal inspection of the property at particular times when Braidwood was allegedly most obviously engaging in commercial activities. According to plaintiff, Pacheco declined, relying instead on Braidwood's word, and Pacheco lied about inspecting the Braidwood Property. Plaintiff admitted that she was not present when Pacheco visited the Braidwood property or spoke with Braidwood, so she did not know what Pacheco observed on the Braidwood property or what Braidwood might have told Pacheco. Plaintiff nevertheless disagreed with Pacheco's interpretation and application of the zoning ordinance, and she believed Pacheco had not actually inspected the Braidwood Property because the violations she perceived to be occurring were "still continuing." Plaintiff further contended that Hamburg Township had created the allegedly illegal conditions on the Braidwood Property by refusing to enforce the zoning ordinance, but admitted that no one from the Township had physically participated in operating a commercial business or placing commercial vehicles on the property.

Plaintiff testified that she performed online searches for Braidwood's sealcoating business, which indicated that he was, in fact, operating the business from the Braidwood Property. Plaintiff

---

fairly stated without argument or bias," and it continues to reflect a failure to understand the difference between facts, opinions, argument, and invective.

[5] Plaintiff testified that she had not made any complaint about this accessory structure.

testified that she had been to the Braidwood Property several times at Braidwood's invitation and had seen the propane tank, but she admitted she had not actually seen Braidwood dispensing propane fuel into commercial vehicles. Plaintiff contended that Braidwood had natural gas to his property, so the only reason for having a large propane tank must be for dispensing fuel for his business. Plaintiff also testified that she had "hundreds of photographs" showing that Braidwood was operating his business on his property.[6] She also pointed out that she "sat behind him at the intersection of Island Shore Drive and M-36 many times" and thus "saw the activity coming out [of the Braidwood Property] on a regular basis." Plaintiff concluded that Braidwood was therefore engaging in a "nuisance trespass" and that she also therefore had proof that Hamburg Township deliberately fails to enforce its ordinances on a selective basis.

Plaintiff was aware that she had a right to file an appeal with the zoning board of appeals if she disagreed with the zoning administrator's decision, but she did not do so because she believed she did not need to. Plaintiff admitted that she was aware that Braidwood's property was in excess of six acres in size, and Hamburg Township had enacted an Ordinance 90-A that permitted a certain number of commercial vehicles to be parked on property depending on the acreage of that property. However, she contended that Ordinance 90-A was an impermissible attempt to supersede the zoning ordinance, under which storage of vehicles was not permitted. Plaintiff contended that she was not aware that the Michigan Zoning Enabling Act and the Hamburg Township zoning ordinance granted discretion to the zoning administrator regarding enforcement of the zoning ordinance. Plaintiff contended that she never sued Braidwood to abate the conditions on his property because she wanted to compel the Township to "do their duty" instead.

Hamburg Township Zoning Administrator Scott Pacheco, who was responsible for enforcing the zoning ordinance as zoning administrator, testified that he had been a zoning administrator and planner in various jurisdictions for a number of years. He testified that, contrary to plaintiff's belief, zoning administrators had discretion regarding enforcement of zoning ordinances. However, he agreed that there was no discretion regarding enforcement of a nuisance per se. He wrote his letter of May 27, 2015, after consulting with the township attorney and concluding that merely parking a commercial vehicle on residential property was not a violation of the zoning ordinance, so such parking did not require a home occupation permit. Pacheco testified that the parking of Braidwood's vehicles was considered incidental to his use of the residential property because Braidwood was driving them back and forth between worksites. Pacheco testified that when he inspected the Braidwood property, he observed a flatbed truck, a trailer, a dump truck, a "small bobcat" and Braidwood's "other truck which I imagine was the sealcoat." Pacheco opined that if Braidwood owned all of the vehicles, and if he was just using them to get back and forth to his business, all of the vehicles would be considered incidental to the primary use of a single-family dwelling under the zoning ordinance. Pacheco also opined that a pole barn on Braidwood's property was a permissible accessory structure and did not exceed any applicable size limit.

---

[6] On cross-examination, plaintiff clarified that she could see the Braidwood Property from her own property, but she could not see Braidwood's house or pole barn.

Pacheco testified that he became involved in the instant matter when the township supervisor, Pat Hohl, forwarded an email from plaintiff on April 10, 2015. Pacheco testified that his normal process in response to such complaints was to visit the site and the contact the applicant. Pacheco believed he received a home occupation application from Braidwood after he received plaintiff's email, and he visited the Braidwood Property shortly thereafter. He also visited the property on other occasions regarding other code complaints. Pacheco testified that he forwarded all information he obtained to plaintiff because she would call them to get the information anyway.

Pacheco opined that if Braidwood had been operating a construction yard, he would have expected to see employees' vehicles, construction materials, and waste and debris; he saw nothing of the sort and instead believed "the property was very well kept." Braidwood was present for all of Pacheco's visits. Pacheco conceded that the property could have been cleaned specifically in anticipation of his visits, and he was never there in the morning; but because he saw no evidence of a violation occurring, he did not believe there was a need to conduct a re-check at specific times. Pacheco observed Braidwood's propane tank, and he did not see the tank equipped with the kind of spigot needed to dispense fuel into a vehicle. He did not observe the tank being used for anything other than residential purposes, and he commented that the "propane tank looked like the exact same type that I had growing up" in a rural area. Pacheco agreed that he sent a letter to Braidwood directing him to stop any commercial activities, but he had not actually seen any evidence of commercial activities. Pacheco denied knowing Braidwood personally, and no one at the township attempted to suggest, threaten, or otherwise manipulate Pacheco into giving Braidwood special treatment.

Pacheco opined that he complied with the requirement in the zoning ordinance that he must inspect each alleged violation and order any discovered violation to be corrected. He clarified that he had the discretion to give people a chance to correct violations before giving them citations, analogous to a police officer having the discretion whether to give someone a ticket or a warning. Pacheco noted that no one attempted to appeal his decisions to the zoning board of appeals.

Before the commencement of the instant action, the Township began to create an ordinance that would regulate the parking and storage of commercial vehicles on residential properties, because the existing ordinance offered no guidance on that issue. The ordinance was first enacted and became effective on August 14, 2015. It was subsequently amended to correct some wording. Pacheco testified that Ordinance 90-A, passed in 2017, allowed parking and storage of up to four commercial vehicles on lots greater than five acres and that the Braidwood Property was over six acres. Pacheco pointed out that there were other requirements, such as actually owning the vehicles, and providing that the vehicles may only be used by the owner or occupant of the property. The ordinance also allowed the vehicles to be driven to and from the property. Pacheco testified that Braidwood stated that he was the owner of the vehicles on the Braidwood Property. Pacheco opined that if a property was in violation to the extent of constituting a nuisance per se, it was the property owner's obligation to correct the condition, and even if the Township sought to compel correction, it would need to obtain a court order first. Pacheco testified that he was not permitted to take enforcement action against conditions that he could not determine, and he could not enforce ordinances that did not exist. Pacheco believed that the word "may" in an ordinance was permissive, and the word "shall" was mandatory.

-6-

The trial court dismissed plaintiff's complaint. It concluded that plaintiff failed to meet her burden of proof to establish entitlement to a writ of mandamus. It determined that plaintiff had a right to bring a civil action to abate a public nuisance arising out of violations of the zoning ordinance, and she had a legal remedy in that she could have appealed the zoning administrator's decision to the zoning board of appeals. The trial court also noted that since the filing of the complaint, Hamburg Township had adopted ordinance 90-A, which permitted Braidwood to park up to four commercial vehicles on the Braidwood Property. Therefore, the trial court concluded, plaintiff's claims had been rendered moot since the filing of the complaint. The trial court subsequently denied defendants' motion for sanctions for frivolity. Plaintiff moved for relief from judgment, which the trial court concluded it lacked jurisdiction to hear because plaintiff had already filed an appeal in this Court.

## II. STANDARDS OF REVIEW

Parties appearing *in propria persona* are entitled to more generosity and lenity in construing their pleadings than would be lawyers; however, they are not excused from providing support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976).

A trial court's decision whether to grant a writ of mandamus is reviewed for an abuse of discretion. *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 378; 909 NW2d 1 (2017). "An abuse of discretion occurs when the trial court 'chooses an outcome that falls outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted). "[T]his Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013). The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). Likewise the interpretation of ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

This Court reviews for an abuse of discretion a trial court's decision whether to award attorney fees and determination of the reasonableness of those fees; reviews for clear error the trial court's underlying factual findings; and reviews de novo any underlying questions of law. *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). "A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 75-76; 903 NW2d 197 (2017). In reviewing a trial court's factual determinations, this Court defers to the trial court's superior ability to evaluate the credibility of witnesses who appeared before it. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986); *Anderson v City of Bessemer City, NC*, 470 US 564, 574-575; 105 S Ct 1504, 1511-1512; 84 L Ed 2d 518 (1985).

"We review the trial court's findings of fact in a bench trial for clear error and conduct a review de novo of the court's conclusions of law." *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). This Court reviews de novo whether and to what extent the law of

the case applies. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008). "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). "In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo." *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009).

## III. WRIT OF MANDAMUS

Plaintiff first argues that the court abused its discretion when it entered a judgment of no cause of action regarding her writ of mandamus complaint. We disagree.

> A writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgement, and (4) no other legal or equitable remedy exists that might achieve the same result. The burden of proving entitlement to a writ of mandamus is on the plaintiff. [*Southfield Ed Ass'n*, 320 Mich App at 378 (quotation marks and citations omitted).]

As an initial matter, "[t]he general rule is that a writ of mandamus is not to be issued where the plaintiff can appeal the error." *Keaton v Village of Beverly Hills*, 202 Mich App 681, 683; 509 NW2d 544 (1993). As noted, one of the essential elements for a writ of mandamus to be issued is the absence of any other legal or equitable remedy. *Southfield Ed Ass'n*, 320 Mich App at 378. Plaintiff admitted that she could have appealed Pacheco's decisions or sued Braidwood directly, but she *chose* not to because she *wanted* to make the Township do so, apparently to prove a political point. Thus, plaintiff cannot satisfy the requirements for issuance of a writ of mandamus.[7]

In any event, plaintiff's argument is exceedingly difficult to follow, and she focuses far more on irrelevant procedural concerns than substance, but she seemingly takes it as a given that Braidwood is producing a nuisance per se on his property, and therefore, the Township was obligated to act to abate it. Pacheco agreed with plaintiff that he was, in fact, obligated to inspect alleged violations of the Hamburg Township zoning ordinance. Plaintiff's argument seemingly rests on the proposition that Pacheco was required to *find* a violation and agree with plaintiff's opinion about the nature of what was occurring on the Braidwood Property—much of which she admitted in her testimony was speculation based on what she believed *must* be occurring. In effect, she contends that the zoning administrator has no discretion to disagree with her conclusions, or to conduct an inspection in a manner different from the way she wishes. Plaintiff's extensive history clearly shows that sometimes she is right, but also that she seemingly is incapable of comprehending the possibility that she might, sometimes, also be wrong.

---

[7] Furthermore, superintending control would also be unavailable where plaintiff had an appellate option available to her. MCR 3.302(B) and (D)(2).

Mandamus may only compel officials to perform duties to which there is a clear legal right and no discretion. It has long been the case that where there is any doubt about the facts, or what conclusions to draw from the facts, mandamus is inappropriate. *Waterman-Waterbury Co v School Dist No 4 of Cato Twp*, 183 Mich 168, 174-175; 150 NW 104 (1914). As noted, plaintiff disagrees with Pacheco's factual findings. That does not entitle plaintiff to dictate her version of the facts to Pacheco. Mandamus might be proper to compel the bare performance of a discretionary act so long as the writ does not seek to dictate how to exercise that discretion. See *McMullen v Peterson*, 300 Mich 166, 168-169; 1 NW2d 494 (1942); *Teasel v Dep't of Mental Health*, 419 Mich 390, 410; 355 NW2d 75 (1984). Thus, plaintiff might be able to compel Pacheco to conduct an investigation of an alleged zoning violation, had he declined to do so. That would still not entitle her to dictate how to conduct that investigation, or what conclusions to draw from that investigation. If the proper manner in which to carry out a duty is open to any reasonable doubt, judgment, or interpretation, the duty cannot be considered ministerial. See *Toan v McGinn*, 271 Mich 28, 34-36; 260 NW 108 (1935); *Smeets v Genesee Co Clerk*, 193 Mich App 628, 636; 484 NW2d 770 (1992).

Plaintiff has simply not provided us with any authority to the effect that there is a mandatory way in which zoning administrators must conduct their inspections, or what conclusions must be drawn from any particular observations made during those inspections. To the contrary, enforcement of a municipal ordinance has been held to be discretionary. *Randall v Delta Charter Twp*, 121 Mich App 26, 35; 328 NW2d 562 (1982). Plaintiff has also not provided us with any authority establishing that Pacheco was obligated to share her beliefs about what was or is occurring on the Braidwood Property. She has made it very clear that she seeks to establish corruption in the Hamburg Township government, but she has actually established a willingness to abuse or ignore legal processes based on her belief that she is entitled to dictate to the Hamburg Township government how it should operate.[8] Mandamus was properly denied.

## IV. OPPORTUNITY TO BE HEARD AND LAW OF THE CASE

Plaintiff contends that the trial court violated this Court's remand order and erred by failing to hold a hearing. We disagree.

When this matter was previously before this Court, the part-dissent expressed a preference for a narrower scope of remand than the remand granted by the lead and concurring opinions. Specifically, the part-dissent would have remanded only for an evidentiary hearing into whether plaintiff had been deprived of an opportunity to move for reconsideration. Insofar as we can discern, plaintiff construes the part-dissent as imposing a binding requirement that the trial court *must* have held an evidentiary hearing. Plaintiff fundamentally misreads the opinion and misunderstands what constitutes the holding in a case with three separate opinions: only where a majority of the judges or justices agree on a particular ground for a decision is that ground binding.

---

[8] We note as well that in Docket Nos. 344321 and 344323, plaintiff attempted to submit to this Court a clearly fabricated order regarding her pursuit of judicial disqualification. *Lamkin v Twp of Hamburg*, unpublished order of the Court of Appeals, entered July 31, 2018 (Docket No. 344321); *Lamkin v Twp of Hamburg*, unpublished order of the Court of Appeals, entered July 31, 2018 (Docket No. 344323).

-9-

*Spectrum Health Hospitals v Farm Bureau Mut Ins Co of Michigan*, 493 Mich 503, 535; 821 NW2d 117 (2012).

"Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). A majority of this Court held that plaintiff must be given notice and an opportunity to be heard, and the trial court must create a reviewable record, before the trial court could summarily dismiss plaintiff's complaint. The trial court must "comply strictly with the mandate of the appellate court" on remand. *Schumacher* 275 Mich App at 128 (quotation marks and citation omitted). Plaintiff received a full trial on the merits of her complaint, during which the trial court granted her far more leeway in her presentation than any attorney would have received. Plaintiff received exactly what this Court required: notice, an opportunity to be heard, and a reviewable record.

Plaintiff also argues that the law of the case doctrine somehow applies to her efforts to disqualify the trial judge. Nowhere did this Court address judicial disqualification in our previous opinion. Plaintiff also seemingly argues that the law of the case doctrine should have entitled her to amend her pleadings under MCR 2.118(A)(2) and to "contest the legal premises underlying the trial court's summary disposition order." Amendment under MCR 2.118 was only discussed by a single judge, and it was in the context of permitting a response to a grant of summary disposition. Again, plaintiff received a full trial. In any event, plaintiff also does not articulate what she would add to an amended pleading, nor did she apparently move to amend in the trial court. See *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999). Furthermore, much of plaintiff's argument seemingly pertains to the propriety of the trial court's 2015 summary disposition order. Any such arguments are completely irrelevant and moot, because this Court vacated that order, and, as discussed, plaintiff received a full trial. An issue is moot when "an event occurs that renders it impossible for the reviewing court to grant relief." *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013). We are therefore unpersuaded that the trial court erred or failed to comply with this Court's directives on remand.

## V. JUDICIAL DISQUALIFICATION

Next, plaintiff argues that the trial court erred when he denied her motion to disqualify the trial court judge because of "impropriety and the appearance of impropriety." We disagree.

MCR 2.002(C)(1)(a) provides that a judge may be disqualified when the judge is "biased or prejudiced against a party or attorney." Disqualification of a judge is also warranted when, "[t]he judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." MCR 2.003(C)(1)(b).

Generally, a trial judge is not disqualified absent a showing of actual bias or prejudice. The mere fact that a judge ruled against a litigant, even if the rulings are

later determined to be erroneous, is not sufficient to require disqualification or reassignment. Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality. [*In re Contempt of Henry*, 282 Mich at 680 (quotation marks and citations omitted).]

Disqualification under the Due Process Clause is only required "in the most extreme cases." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009) (quotation marks and citation omitted).

Due process principles require disqualification, absent a showing of actual bias or prejudice, "in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," such as situations when the judge has a pecuniary interest in the outcome, has been the target of personal abuse or criticism from a party, is enmeshed in other matters involving a party, or has previously participated in the case as an accuser, investigator, fact-finder, or initial decisionmaker. [*Id.* (citation omitted).]

Plaintiff, without identifying any specific acts or providing citations to the record, argues that "the trial court," presumably but not clearly referring to Judge Hatty, engaged in "a malicious act of premeditated tampering and interference with [her] right to due process."[9] Plaintiff also argues that the trial court was partial because it "orchestrated and implemented a malicious premediate directive that prevented [her] from actually accessing the judicial system." It is readily apparent from plaintiff's brief that she feels very strongly about this, but we are unable to discern any facts or coherent argument in support of this proposition, nor do we comprehend her efforts at explaining why Judge Hatty should have been interested in expending the energy on such a conspiracy. We are therefore unable to entertain it. *Estelle*, 429 US at 106-108; *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Below, plaintiff argued that Judge Hatty was prejudiced against her based on his prior rulings against her and the "threatening" statements made during a May 18, 2017 status conference, which appear to have been related to a separate action. Plaintiff also appears to refer to Judge Hatty's 2015 summary disposition order granting summary disposition in favor of defendants, which was vacated by this Court, to support her argument that the judge was biased. However, "[t]he mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich at 680. Further, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App at 567.

---

[9] It appears that plaintiff is not focusing on the motion for disqualification of Chief Judge Reader, although she appears to take issue with the decisions of all the judges involved in the Judge Hatty disqualification determination.

Plaintiff also argues that the trial court perpetrated a "fraud on the court." Plaintiff provides several non-binding cases[10] in an effort to define what that term means. We deduce that, in essence, plaintiff contends that the trial judge was corrupt, lacked impartiality, or otherwise failed to perform judicial duties in an honest manner. See *Alexander v Robertson*, 882 F2d 421, 425-426 (CA 9, 1989); *Bulloch v United States*, 763 F2d 1115, 1121-1122 (CA 10, 1985); *Kenner v CIR*, 387 F2d 689, 691-692 (CA 7, 1968). Those cases require a high burden of proof to sustain such a claim. Plaintiff's basis for asserting a "fraud on the court" is, apparently, the trial court's denial of her motion for reconsideration. As with the binding authority in Michigan regarding judicial disqualification, it is not enough for a trial court to make an error, if indeed the trial court did err.[11] Plaintiff provides no evidence that the trial court denied her motion for corrupt or dishonest reasons. Thus, even if we were to accept her "fraud on the court" authority at face value, she has not established any basis for overturning the proceedings.

Plaintiff failed to establish that Judge Hatty was biased or prejudiced against her under MCR 2.003(C)(1)(a), or that he appeared to be prejudiced under MCR 2.003(C)(1)(b). Plaintiff also failed to establish that Judge Hatty's actions were reflective of a high probability of bias requiring disqualification based on due-process concerns. As we have noted, we have carefully reviewed the transcripts of the trial, and we are impressed by the care and patience with which Judge Hatty conducted the proceedings despite plaintiff's efforts to present argument at inappropriate times and occasional contentiousness. Again, Judge Hatty granted plaintiff considerably more leeway than any attorney could possibly have had reason to expect, and he tolerated conduct that might well have resulted in an attorney being held in contempt. Plaintiff simply draws conclusions about Judge Hatty's probable motives based on what reads more like a combination of paranoia, intolerance for anyone disagreeing with her, and inability to comprehend the possibility that she might, occasionally, be wrong. Accordingly, plaintiff's motion for disqualification was properly denied.

## VI. ORDINANCE 90-A

Plaintiff also challenges the trial court's reliance on Ordinance 90-A. Plaintiff's argument is that Ordinance 90-A is "actually void on its face," because it is a general ordinance that cannot take precedence over a zoning ordinance. Plaintiff relies on *Addison Twp v Gout*, 435 Mich 809; 460 NW2d 215 (1990). In that case, under statutes in place at the time, our Supreme Court held that the former Township Rural Zoning Act conferred upon municipalities broad authority to regulate land use, subject to a specific exception that the Court construed narrowly. *Id*. at 813-816. We find nothing in that case setting forth a hierarchy of townships' "general" and "zoning" ordinances, and we find no other authority provided by plaintiff establishing any such hierarchy.

---

[10] Decisions of lower federal courts and other state courts may have persuasive value, but they are not binding. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529 nn 2, 4; 791 NW2d 724 (2010).

[11] It is not clear to *which* motion for reconsideration she refers. As noted, to the extent plaintiff continues to make much of what occurred in 2015, any such events or non-events are moot.

However, we have found some authority establishing that there is a distinction between a regulatory ordinance and a zoning ordinance; and concluding that an ordinance regulating the parking or storage of vehicles other than on public streets and sidewalks is substantively a zoning ordinance. *Recreational Vehicle United Citizens Ass'n v City of Sterling Heights*, 165 Mich App 130, 136; 418 NW2d 702 (1987). This Court held that if an ordinance is, in substance, a zoning ordinance, it must be passed in accordance with applicable statutes governing enactment of zoning ordinances. Courts look to the substance of matters, rather than their labels. *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958). Thus, irrespective of whether it is called a zoning ordinance or a general ordinance, if Ordinance 90-A was not enacted in the manner of a zoning ordinance, it may be challengeable as invalid.[12] However, plaintiff fails to appreciate that we must presume an ordinance to be valid in the absence of evidence to the contrary, and plaintiff would have the burden of timely showing that the ordinance was improperly enacted. See *Bengston v Delta Co*, 266 Mich App 612, 263-264; 703 NW2d 122 (2005). Plaintiff may have a point, but she has provided no authority or evidence proving it.

In any event, the trial court did not rely on Ordinance 90-A for the conclusion that plaintiff was not entitled to a writ of mandamus, which it had already correctly determined. Rather, the trial court relied on Ordinance 90-A for the conclusion that plaintiff's challenge to Braidwood parking commercial vehicles on the Braidwood Property was moot. The trial court's ruling was apparently correct under Ordinance 90-A as it stands, and as noted, it was not the trial court's or defendants' obligation to prove Ordinance 90-A valid. Furthermore, even if Ordinance 90-A is, hypothetically, subject to challenge for having been improperly enacted,[13] we question whether plaintiff could have standing to challenge Ordinance 90-A unless she seeks to personally exceed its restriction on the number of vehicles that she could park on her own property. Plaintiff has, in any event, failed to establish that Ordinance 90-A *must* have been improperly enacted, or that calling it a "general" ordinance precludes it from having effect even if it substantively operates as a zoning ordinance.

## VII. MISCELLANY

Plaintiff seemingly believes the trial court committed a number of other material misstatements, misrepresentations, or misapplications of the law not already discussed. However, to the extent she does not identify those mistakes or explain why they are erroneous, we will not search for them on her behalf. *Estelle*, 429 US at 106-108; *Mitcham*, 355 Mich at 203.

Plaintiff argues that "an egregious and absolutely false statement" made by the trial court was that plaintiff had requested a hearing on a request for order to show cause. Apparently, plaintiff believes this is false because of the trial court's 2015 dismissal, and because the trial court did not hold an evidentiary hearing. However, as discussed, whatever did or did not happen in 2015 is irrelevant and moot. Also as discussed, this Court did not, in fact, order the trial court to hold an evidentiary hearing. In any event, what the trial court actually held was that "[t]he request

---

[12] We expressly do not decide this; we only note that it might be possible.

[13] To be clear, we have no knowledge of whether it *was* enacted pursuant to an incorrect procedure, and we infer from plaintiff's brief that she also does not have such knowledge.

-13-

for order to show cause is moot as we had the hearing as requested by the, by the plaintiff." One might, in an exercise of sheer pettifoggery, challenge whether a "trial" is exactly the same thing as a "hearing," but in substance, the trial court was correct that the trial gave plaintiff her opportunity to be heard.

## VIII. SANCTIONS

Defendants argue that the trial court erred when it denied their motion for sanctions. In January 2019, defendants filed a motion for sanctions under MCR 1.109(E)(5), (6), and (7), claiming the complaint was not well-grounded in fact or warranted by existing law, and under MCR 2.625(A)(2) and MCL 600.2591, claiming that plaintiff had pursued a frivolous action. The trial court denied the motion without articulating a basis for its decision. We decline to consider the merits of this claim, because when a trial court fails to articulate a clear basis for its decision regarding sanctions, it is impossible for this court "to ascertain whether the trial court clearly erred" and that this Court must "vacate that portion of the order and remand for appropriate findings." *Home-Owners Ins Co*, 320 Mich App at 79. Because the trial court did not articulate its basis for denying sanctions, we are constrained to vacate the trial court's order denying sanctions, remand for appropriate findings, and instruct the trial court to articulate its findings that serve as the basis for its ruling. We emphasize that the trial court is not obligated to grant or deny sanctions on remand, but only to articulate its reasoning on the record.

## IX. CONCLUSION

In Docket No. 347064, we affirm the trial court's order granting a judgment of no cause of action in favor of defendants. In Docket No. 347064, defendants, being the prevailing parties, may tax costs. MCR 7.219(A). In Docket No. 347744, we vacate the trial court's order denying defendants' motion for sanctions and remand for articulation on the record of the trial court's reasoning. In Docket No. 347744, the parties shall bear their own costs. MCR 7.219(A). Strictly for the sake of expediency, we retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

# ORDER

Kathleen Jansen
Presiding Judge

Mary Ann Lamkin v Hamburg Township Board of Trustees

Docket No. 347744

LC No. 15-028656-CZ

Karen M. Fort Hood

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court's order denying defendants' motion for sanctions is vacated and this matter is remanded for articulation on the record of the trial court's reasoning. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Kathleen Jansen
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 19, 2020
Date

Chief Clerk