*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MCLIN, Minors.

UNPUBLISHED
July 21, 2022

No. 359003
Macomb Circuit Court
Family Division
LC No. 2021-000157-NA;
       2021-000158-NA

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Respondent-mother's children, JM and AM, were removed from her custody following complaints of physical abuse. Over the course of these child protective proceedings, the trial court authorized the petition for temporary wardship and took jurisdiction over JM and AM. Respondent-mother argues that the court's findings of probable cause to authorize the petition and statutory grounds to establish jurisdiction were improper, and she contends that her children should have been returned to her custody before adjudication. Finding no errors, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2021, Children's Protective Services (CPS) worker Chelsea Kendrick-Singh, filed a petition on behalf of petitioner, the Department of Health and Human Services (DHHS), requesting that the trial court take jurisdiction over JM and AM and issue an order removing the children from the home.[1] The petition alleged that CPS investigated three complaints involving respondent-mother between January and March 2021: one for improper supervision and physical neglect of JM, and two for physical abuse of JM. According to the petition, respondent-mother

---

[1] While DHHS filed a petition for temporary wardship on June 30, 2021, a previous petition was dated March 16, 2021. However, this prior petition—as well as an order of adjudication and order of disposition—was dismissed without prejudice because of improper notice of trial. Additionally, a second amended petition was filed on September 29, 2021, but respondent-mother only challenges the authorization of the June 30, 2021 petition.

had not complied with CPS investigations, and threatened to take her children out of school and move to another state to prevent further CPS intervention. The petition alleged that, because of respondent-mother's physical abuse of JM, AM was also at substantial risk of harm by remaining in respondent-mother's care. A referee issued an order removing JM and AM from respondent-mother's care and placing the children in the custody of DHHS.[2]

At a preliminary hearing on July 1, 2021, Kendrick-Singh testified that JM and AM had been placed with relatives. She explained that her belief that removal was necessary for the children's safety was based on "the original allegations of [the] petition." Kendrick-Singh testified about some of the incidents detailed in the petition, including respondent-mother's admission to a mental health hospital and JM's multiple disclosures of physical abuse. Kendrick-Singh also stated that CPS formed a safety plan with respondent-mother, instructing her to refrain from using physical discipline, but respondent-mother did not comply. Respondent-mother testified and denied that JM suffered any physical abuse or that she physically disciplined her children.

At the conclusion of the hearing, the court ordered that the children remain under the care and supervision of DHHS with supervised visitation by respondent-mother. Further, the court found that reasonable efforts had been made to prevent the removal of children from respondent-mother's home, and also that there was probable cause that one or more of the allegations in the petition was true. Accordingly, the court authorized the petition.

On October 1, 2021, the trial court held a trial to determine whether to exercise jurisdiction over JM and AM. CPS supervisor Jillian Snell and Dr. Gary Reinheimer testified about the evidence of physical abuse suffered by JM. Respondent-mother testified, again denying that she physically abused her son and stating that she had no anger management issues. Respondent-mother's boyfriend also testified that he was present for two of the alleged instances of physical discipline and that respondent-mother never touched JM.

At the conclusion of the trial, the court found that DHHS had met its burden for establishing jurisdiction. The court noted that there was a complaint of physical abuse after CPS instituted a safety plan and that JM reported that respondent-mother caused his injuries. With regard to AM, while there was no statement that she had been abused, the court found that evidence against one child could show that another child is also at risk. Accordingly, the court found that the statutory grounds for exercising jurisdiction had been established by a preponderance of the evidence. Further, the court continued JM and AM under the care and supervision of DHHS, found reasonable efforts to prevent removal had previously been made, and ordered respondent-mother to comply with a Parent-Agency Agreement. This appeal followed.[3]

---

[2] Although the removal order at issue was entered on June 30, 2021, the children had been removed from respondent-mother's custody on March 16, 2021, when the previous petition was filed.

[3] These child protective proceedings also involved the children's father, but he has not filed an appeal.

## II. STANDARDS OF REVIEW

We review "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297. The interpretation of court rules and statutes are questions of law that we review de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

## III. ANALYSIS

As an initial matter, petitioner contends that this Court lacks jurisdiction to consider respondent-mother's appeal because her brief was filed more than 63 days after entry of the dispositional order authorizing the petition. See MCR 3.993(C)(2). However, this Court does not lose jurisdiction because of the late filing of a brief. See MCR 3.993; MCR 7.204(A)(1). In addition, respondent-mother timely filed a claim of appeal following the trial court's order of adjudication. Respondent-mother filed her appeal on October 22, 2021—17 days after the October 5, 2021 order of adjudication was entered by the trial court. See MCR 7.204(A)(1) ("[A]n appeal of right in any civil case must be taken within 21 days.").

To the extent that petitioner argues that respondent-mother cannot challenge the order authorizing the petition while appealing from the order of adjudication, petitioner's claim also lacks merit. "[T]he 'collateral bar' rule generally prohibits a litigant from indirectly attacking a prior judgment in a later, *separate* action, unless the court that issued the prior judgment lacked jurisdiction over the person or subject matter in the first instance." *In re Ferranti*, 504 Mich 1, 22; 934 NW2d 610 (2019) (citation omitted). But the "collateral-bar rule does not apply within one child protective case," as it is "a single continuous proceeding." *Id*. at 23, 35 (quotation marks and citation omitted). Therefore, respondent-mother's appeal of the trial court's authorization of the petition and removal of JM and AM from respondent-mother's care after the July 1, 2021 preliminary hearing is not a collateral attack.

Petitioner also claims that respondent-mother's appeal is moot because she did not appeal from the initial order of removal and adjudication has now occurred. This Court generally will not decide issues that are moot. *T.M. v M.Z.*, 501 Mich 312, 316; 916 NW2d 473 (2018). "[A]n issue becomes moot when an event occurs that renders it impossible for the reviewing court to grant relief." *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013). If the trial court does not authorize the petition, the adjudication phase will not follow. *In re Ferranti*, 504 Mich at 15. Accordingly, a finding that the trial court incorrectly authorized the petition would not render "it impossible for the reviewing court to grant relief" because this matter would not have been properly before the trial court during the adjudication phase and JM and AM would not have been removed from respondent-mother's care. *CD Barnes Assoc*, 300 Mich App at 406. Therefore, this appeal is not moot.

Moving on to respondent-mother's arguments, she contends that the trial court's decision to adjudicate and establish jurisdiction over her children under MCL 712A.2(b)(1) and (2) was improper. In doing so, respondent-mother focuses exclusively on the authorization of the petition at the July 1, 2021 preliminary hearing. Therefore, we construe respondent-mother's argument as follows: the court's finding of jurisdiction following the October 1, 2021 trial was invalid because, but for the trial court's improper authorization of the petition, a finding of jurisdiction would never have occurred.

At a preliminary hearing, "[t]he court may authorize the filing of the petition upon a showing of probable cause, unless waived, that one or more of the allegations in the petition are true and fall within MCL 712A.2(b)." MCR 3.965(B)(12). MCL 712A.2(b)(1) and (2), in relevant part, provide jurisdiction over proceedings involving the abuse or neglect of juveniles:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

Further, the Michigan Rules of Evidence do not apply at a preliminary hearing in a child protective proceeding, other than evidentiary rules on privilege. MCR 3.965(B)(12).

First, we must address whether the trial court properly found that there was probable cause that one or more of the allegations in the petition was true. The court's finding of probable cause was supported by the testimony of CPS worker Kendrick-Singh. Kendrick-Singh testified that respondent-mother was taken to the hospital in January 2021 for suicidal ideation and then was admitted to another facility to receive mental health treatment for five days. Kendrick-Singh described multiple allegations of physical abuse by respondent-mother against JM. Specifically, she testified that JM reported that respondent-mother dug her nails into his arm and pushed him down two stairs, pushed him against a wall—causing a picture frame to fall on his head—and pulled his leg as he tried to go up the stairs. Kendrick-Singh stated that respondent-mother was not cooperative with CPS during the investigations of these allegations.

In particular, respondent-mother takes issue with the probable cause finding because Kendrick-Singh had no personal knowledge of respondent-mother's participation in services and relied solely on the petition to support her testimony. While Kendrick-Singh admitted that she had little personal knowledge of this case and was "going off the original allegations of [the] petition," Michigan Court Rules do not require that a witness have personal knowledge at a preliminary hearing in a child protective proceeding, nor do they prevent the admission of hearsay. See MCR

3.965(B)(12). Put simply, the standard to authorize a petition is low, as the trial court need only find "probable cause . . . that one or more of the allegations in the petition are true and fall within MCL 712A.2b." *Id*. Kendrick-Singh's testimony about the allegations of physical abuse in the petition provided a sufficient basis for the trial court's probable cause finding, and we therefore find no error with respect to the authorization of the petition.

Respondent-mother next argues that, if probable cause to authorize the filing of the petition was established at the preliminary hearing, the trial court erred by not returning JM and AM to respondent-mother while the case was pending. At a preliminary hearing, the trial court "must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." MCR 3.965(B)(12). "If the trial court authorizes the petition at the preliminary hearing, the trial court may release the child to a parent, guardian, or legal custodian, or 'may order placement of the child . . .' " *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448-449; 861 NW2d 303 (2014), citing MCR 3.965(B)(13)(b).

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).]

The court "must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *In re Benavides*, 334 Mich App 162, 168; 964 NW2d 108 (2020).

In this case, the trial court made findings on the record that reasonable efforts had been made to prevent removal of the children from respondent-mother's home. These included prior CPS investigations, which resulted in the creation of a safety plan, as well as a psychiatric hospitalization of respondent-mother and interviews with the children. Additionally, the extent of reasonable efforts to prevent removal was necessarily limited by the short timeline between the filing of the petition at issue and the order of removal. Accordingly, the trial court did not clearly err in determining that reasonable efforts had been made, "consistent with the circumstances," to

prevent or eliminate the removal of JM and AM from respondent-mother's home. MCL 712A.13a(9)(d).

The order entered by the trial court after the preliminary hearing also noted that it was contrary to the welfare of the children to remain in respondent-mother's home because of three prior CPS investigations since January 2021. The order noted that respondent-mother failed to follow through with discharge instructions regarding mental health treatment and also indicated that respondent-mother was uncooperative and failed to take responsibility for her actions. These findings were supported by the record and justified the court's contrary-to-the-welfare determination. See MCL 712A.13a(9)(c). Also, given the serious and recurrent allegations of physical abuse, it was reasonable to conclude that leaving the children with respondent-mother presented a risk of substantial harm, MCL 712A.13a(9)(a), that removal was the only reasonably available option to protect JM and AM from this risk, MCL 712A.13a(9)(b), and that placement with relatives adequately protected the children's health, MCL 712A.13a(9)(e). Therefore, the trial court did not clearly err in finding that JM and AM should have been removed from respondent-mother "pending trial." MCL MCR 3.965(B)(12).

Finally, respondent-mother challenges the trial court's findings establishing jurisdiction over the children. "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A preponderance of the evidence must support the jurisdictional grounds. MCR 3.972(C)(1). In this case, the trial court exercised jurisdiction under MCL 712A.2(b)(1) and (2).

At trial, CPS supervisor Jillian Snell testified that allegations were received by CPS that respondent-mother locked JM out of his home at night without a coat when it was 28 degrees. Snell also testified to multiple instances of abuse committed by respondent-mother against JM.[4] Specifically, Snell noted that allegations were made that respondent-mother pushed JM's head into a wall, pushed JM down the stairs, struck him in the back, and dug her nails into him. Snell testified that JM and AM both reported feeling unsafe, and AM also indicated that she was physically disciplined but that it did not hurt when she was disciplined. Snell further stated that respondent-mother did not take accountability for JM's injuries, threatened a foster care worker, and failed to attend a follow up appointment for mental health treatment after her discharge from a mental health facility.

Dr. Gary Reinheimer also testified at trial that he examined JM at an urgent care and discovered signs of physical abuse—abrasions on his left forearm, right shoulder, and right buttocks—that JM blamed on respondent-mother. Dr. Reinheimer testified that JM answered his questions directly and did not appear to be anxious. Given this evidence, the trial court did not clearly err in finding by a preponderance of the evidence that JM and AM came within the court's jurisdiction. There was sufficient evidence to establish that respondent-mother "refuse[d] to provide proper or necessary support . . . or other care necessary for [JM's and AM's] health or morals," MCL 712A.2(b)(1), and that respondent-mother's home was an "unfit place for [JM and

---

[4] In August 2021, respondent-mother pleaded no-contest to a misdemeanor domestic violence charge involving the conduct against JM.

AM] to live in" because of respondent-mother's "neglect, cruelty . . . [or] criminality," MCL 712A.2(b)(2).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett