*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMIE M. TREADWAY,

Plaintiff-Appellee,

v

JOSEPH C. TREADWAY, JR.,

Defendant-Appellant.

UNPUBLISHED
March 18, 2025
11:28 AM

Nos. 367051; 368614
St. Clair Circuit Court
LC No. 22-000491-DO

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals as of right the trial court's judgment of divorce and its postjudgment order awarding plaintiff attorney fees. We affirm the trial court's division of property but vacate its award of attorney fees and remand for further proceedings.

## I. BACKGROUND

The parties married in December 2015 but ceased living together in May 2020. While they were married, the couple ran an automobile-repair business, Marine City Auto Care (MCAC), together. After plaintiff commenced this divorce action on March 8, 2022, she stopped working for MCAC. Around the same time, defendant stopped putting money into the MCAC account that plaintiff had access to, so she could no longer withdraw the $450 per week that she was previously using to pay her expenses. This caused plaintiff to file an emergency motion asking the trial court to order defendant to continue making payments to plaintiff to maintain the status quo. The trial court granted plaintiff's motion and entered a status-quo order on May 2, 2022.

Defendant failed to comply with the status-quo order, causing plaintiff to file two show-cause motions in June 2022 and October 2022. In response to both motions, defendant claimed that he could not afford to make the ordered payments in part because MCAC temporarily closed

---

[1] *Treadway v Treadway*, unpublished order of the Court of Appeals, entered October 2, 2024 (Docket Nos. 367051 and 368614).

a month after the divorce proceedings began. MCAC reopened at a new location, and defendant continued running the business without plaintiff's involvement. In November 2022, defendant moved to amend the status-quo order, arguing that, since the order was entered, plaintiff had gained employment and her live-in boyfriend was paying some of her household expenses. The trial court refused to grant defendant's motion to modify the status-quo order because defendant was not making his payments under the order.

The case proceeded to trial over several days in April and May 2023, and the trial court heard closing arguments and issued a ruling from the bench on June 1, 2023. Addressing defendant's failure to make payments under the status-quo order, the court noted that defendant owed more than $30,000 under the order, but it decided to only require defendant to pay $20,000 of that amount. As for the marital estate, the parties' significant assets included plaintiff's premarital home (the 921 Carroll Street property); defendant's premarital home (the River Road property); a property the parties acquired during the marriage (the 918 Carroll Street property); a horse trailer; MCAC; a Ford truck that defendant drove; and a Chevy truck and Chrysler Sebring that plaintiff drove. The trial court ruled that plaintiff would keep the 921 Carroll Street property, the horse trailer, the Chevy truck, and the Chrysler Sebring; defendant would keep MCAC, the River Road property, and the Ford truck; and the parties would sell the 918 Carroll Street property and split the proceeds equally. The trial court also ordered defendant to pay plaintiff $8,000 in attorney fees because (1) plaintiff was unable to bear the cost of litigation and (2) defendant unreasonably prolonged the litigation by failing to negotiate in good faith and refusing to comply with the status-quo order.

After trial concluded, defendant discovered that MCAC's outstanding tax liability was significantly higher than the parties believed it to be during trial. Having already appealed the judgment of divorce, defendant filed a motion to remand so that he could move for relief from judgment in the trial court. This Court granted defendant's motion. *Treadway v Treadway*, unpublished order of the Court of Appeals, entered April 11, 2024 (Docket No. 376051).

On remand, defendant argued that he was entitled to relief from judgment under MCR 2.612(C)(1)(b) and (f) on the basis of MCAC's newly-discovered tax liability. The trial court denied defendant's motion, reasoning that defendant failed to satisfy the requirements of either rule. The case now returns to this Court for plenary review.

## II. DIVISION OF PROPERTY

Defendant first argues that the trial court erred by awarding plaintiff a greater portion of the marital estate. We disagree.

A trial court's dispositional ruling should be "fair and equitable in light of the trial court's findings of fact," and this is reviewed for clear error, meaning that "this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Woodington v Shokoohi*, 288 Mich App 352, 365; 792 NW2d 63 (2010). A trial court's factual findings supporting its dispositional ruling are likewise reviewed for clear error. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *Id.*

-2-

Before dividing the marital estate, the trial court must decide "what property is marital and what property is separate." *Id*. "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201. Each party is generally awarded their separate property without invasion by the other party, while the marital property is apportioned between the parties "in a manner that is equitable in light of all the cirumstances." *Id*. The trial court's goal when dividing the marital estate is to achieve an equitable distribution of property, not necessarily an equal one. *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993).

The trial court here ordered that the parties each keep the real property that they entered the marriage with as well as the vehicles that each used. This meant that plaintiff kept the 921 Carroll Street property, the Chevy truck, and the Chrysler Sebring, while defendant kept the River Road property and the Ford truck. The trial court also awarded each party the marital assets that they utilized—it awarded plaintiff the horse trailer because she was the one who used the trailer, and it awarded defendant MCAC because defendant ran the business without plaintiff after the couple separated. As for the 918 Carroll Street property, the court ordered that it be sold and that the parties split the proceeds from the sale equally. On its face, this award appears both reasonable and equitable—the parties were each awarded (1) the property that they entered the marriage with, (2) the vehicles they used, and (3) the valuable assets that they utilized.

Defendant assails this division of property for a number of reasons. First, he contends that the trial court's award does not account for the fact that the $35,000 that defendant paid to acquire MCAC was separate property because defendant made this investment before the parties were married. The trial court rejected defendant's argument that his initial investment in MCAC was separate property because the court found that MCAC had since become a marital asset. This finding was not clearly erroneous, as the record supports that MCAC became a marital asset after defendant made plaintiff a joint owner and the two ran the business together, treating it as marital property. See *Cunningham*, 289 Mich App at 201 (explaining that a separate asset may lose its character as separate proeprty when it is commingled with marital assets and treated as marital property). The $35,000 investment that defendant made to acquire MCAC lost any character it had as separate property when MCAC itself became marital property. The trial court therefore did not err by refusing to treat defendant's initial $35,000 investment in MCAC as separate property.

Second, defendant contests the trial court's valuation of MCAC at $90,000, but his argument is specious. Defendant criticizes the trial court for arriving at the $90,000 figure "without expert testimony," but the lack of expert testimony on this point is the fault of the parties, not the trial court. The trial court had to rule on the record that was presented to it, and that record did not contain any expert testimony. What the record did contain was the parties' testimony that MCAC was purchased for $75,000, defendant's testimony that he purchased $26,000 worth of tools for MCAC, and plaintiff's testimony that the tools purchased for MCAC retained a value of $15,000. On the basis of this evidence, the trial court's finding that MCAC was worth $90,000 was reasonable, particularly given the lack of evidence supporting a different valuation.

Third, and finally, defendant complains that the trial court's property distribution was inequitable because it favored plaintiff due to the fact that the trial court awarded plaintiff the 921 Carroll Street property without awarding defendant any of the appreciated value of the property. Defendant's argument is grounded in the legal principle that a spouse is entitled to "any increase"

in the value of a separate asset "over the term of a marriage" because that "amount is clearly part of the marital estate." *Reeves v Reeves*, 226 Mich App 490, 495; 575 NW2d 1 (1997). While it is true that the trial court's award significantly favored plaintiff due to the value of the 921 Carroll Street property and the fact that the trial court awarded plaintiff that property outright, we are not definitely and firmly convinced that the court's dispositional ruling was inequitable.

Every asset that the trial court awarded to a party was awarded outright—the trial court awarded plaintiff the 921 Carroll Street property without awarding defendant any of the property's appreciated value in the same way that the court awarded defendant the River Road property without awarding plaintiff any of that property's appreciated value.[2] While this ended up favoring plaintiff because the 921 Carroll Street property appreciated more than the River Road property, the main reason that the 921 Carroll Street property appreciated more is because it was worth more when the parties married. That is, the larger increase in value of the 921 Carroll Street property was due to plaintiff's investment in a more valuable property, not to actions taken during the marriage.[3]

Defendant insists that the trial court's award was inequitable because it did not account for the fact that the parties used marital funds to pay off a roughly $30,000 mortgage that was encumbering the 921 Carroll Street property. This argument, however, overlooks evidence in the record suggesting that defendant used funds he earned during the marriage—that is, marital funds—to make payments on a mortgage for the River Road property. Those mortgage payments that increased defendant's equity in the River Road property were never considered to plaintiff's benefit just as the mortgage payments that increased plaintiff's equity in the 921 Carroll Street property were never considered to defendant's benefit.

The foregoing shows that the trial court treated the real property that each party came into the marriage with the same—each party left the marriage with the real property that they came into the marriage with, and neither party was awarded any interest in the appreciation in value of the other's property. The result of dividing the property in this way was an unequal division of the marital estate, but we are not definitely and firmly convinced that dividing the marital estate in a way that treated the parties' respective properties the same was inequitable. This is especially so because the trial court somewhat balanced the unequal distribution of the parties' real property by awarding defendant the parties' revenue-generating asset—MCAC—without awarding plaintiff anything for her stake in the company. While defendant questions the trial court's $90,000 valuation of MCAC, the court itself believed that the $90,000 figure was "conservative[]" because it did not include the $200,000 land contract that MCAC signed for its current location. We tend to agree with the trial court on this point, and that reasoning further supports that the court's

---

[2] Defendant does not contest that the amount that the River Road property appreciated during the parties' marriage was a marital asset.

[3] Though some improvements were made to the 921 Carroll Street property during the marriage, there is no evidence establishing to what extent, if any, those improvements increased the value of the property.

distribution of the marital estate was "equitable in light of all the circumstances." *Cunningham*, 289 Mich App at 200.

For these reasons, we are not definitely and firmly convinced that the trial court's division of the marital estate was inequitable, so we affirm that portion of the lower court's ruling. *Woodington*, 288 Mich App at 365.

## III. STATUS-QUO ORDER

Defendant next challenges the trial court's order that defendant pay plaintiff $20,000 for money he owed under the trial court's status-quo order. That order was the result of an emergency motion filed by plaintiff on March 25, 2022. Plaintiff's emergency motion asked the court to order defendant to pay plaintiff $450 per week, claiming that plaintiff had been taking this amount out of the couples' MCAC account before she filed for divorce and that, since plaintiff filed for divorce, defendant stopped putting money into that account, so plaintiff no longer had any money "to pay her bills." Defendant objected to plaintiff's motion, and the trial court heard argument on April 7, 2022. At the hearing, plaintiff's counsel represented that, besides withholding money from the couples' joint account, defendant had stopped making payments for plaintiff's truck, which he had been doing before plaintiff filed for divorce. At the conclusion of the hearing, the trial court ordered that defendant pay plaintiff $450 per week and make the payments for plaintiff's truck in order to maintain the status quo until the parties' divorce was finalized. The court memorialized this ruling in a May 2, 2022 order. That order required defendant to pay plaintiff $450 per week and "pay the Plaintiff's pick-up truck payment until the divorce is final." The order stated that plaintiff was able to access $2,000 since she filed for divorce, so defendant was only required to pay $250 "for the week of April 12, 2022," and was thereafter required to pay $450 per week until the divorce was finalized.

Despite largely failing to comply with this order, defendant moved to modify the status-quo order in November 2022. The trial court held a hearing on defendant's motion in January 2023, and after learning that defendant was still not making the payments required of him by the status-quo order, the court refused to grant defendant's motion, reasoning, "You can't come in and say, you know, I need relief from this order that I'm not complying with anyway."

Following this hearing, defendant continued to not comply with the status-quo order, so by the time the trial court issued its ruling on June 1, 2023, defendant owed plaintiff over $30,000 under the order. In its June 1 ruling, though, the trial court stated that it would reduce the amount that defendant owed under the order to $20,000. The court's ruling that defendant pay plaintiff $20,000 for arrears owed under the status-quo order was incorporated into the judgment of divorce, and it is that $20,000 required payment that defendant now challenges on appeal.

Defendant contends that "without knowing the basis of the trial court's ruling, the trial court erred in ruling that [defendant] was obligated to [plaintiff] in the amount of $20,000." But we do know "the basis" for the trial court's ruling—it is the May 2, 2022 status-quo order. That order required defendant to pay plaintiff $450 per week and to make the monthly payments for plaintiff's truck. Defendant largely refused to follow this order and, as a result, owed plaintiff over $30,000, and the court ordered that defendant only had to pay $20,000 of that amount.

Defendant complains that the trial court did not explain the factual basis on which it relied to reach the $20,000 figure, but that is because defendant did not owe $20,000 under the status-quo order—he owed over $30,000. While the trial court reduced that amount to $20,000, this does not change the fact that defendant owed over $30,000 for payments required by the status-quo order.

Defendant insists that the status-quo order became improper after plaintiff obtained employment, and her boyfriend moved in with her and provided some financial support. We agree with defendant in that, given these changes to plaintiff's financial situation, the trial court could have modified the status-quo order. That said, we cannot agree with defendant to the extent he argues that such changes *required* the court to modify the status-quo order. The status-quo order was a temporary order entered under MCR 3.207(C), and Subsection (3) of that rule provides, "A temporary order may be modified at any time during the pendency of the case, following a hearing and upon a showing of good cause." MCR 3.207(C)(3). The court rule's use of "may" establishes that a trial court has discretion to modify a temporary order, even if a party establishes good cause to do so. See *Lashbrook v Grasak*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369669); slip op at 4 (holding that a court rule's use of "may" establishes that the rule is discretionary). Defendant does not explain how the trial court's refusal to grant defendant's motion amounted to an abuse of discretion under the circumstances, thereby abandoning the argument. See *id*. at 5, n 4 (explaining that a party abandons an argument "[b]y failing to address" it).

But even if we addressed the issue, we would still conclude that defendant was not entitled to appellate relief. The trial court reasoned that it was not going to relieve defendant of his obligations under the status-quo order while defendant was refusing to comply with those obligations, regardless of any changes to the parties' financial situations. The court later elaborated that its refusal to grant defendant's motion was also based on the court's belief that defendant was not being truthful when he claimed that he did not have the money to satisfy his obligations under the status-quo order because, during that same time, defendant had enough money to move MCAC to a new location. The court's refusal to grant defendant relief from an order that defendant was refusing to follow despite having the ability to do so was not outside the range of reasonable and principled outcomes, so it did not constitute an abuse of discretion. See *Zalewski v Zalewski*, 342 Mich App 429, 433; 995 NW2d 553 (2022) (explaining that a trial court abuses its discretion if it chooses an outcome that falls outside the range of reasonable and principled outcomes).

For these reasons, we discern no error with the trial court's handling of the status-quo order.

## IV. RELIEF FROM JUDGMENT

Next, defendant argues that the trial court abused its discretion by denying his motion for relief from judgment. We disagree.

A trial court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 422; 834 NW2d 878 (2013). A trial court abuses its discretion when it chooses an outcome that falls "outside the range of principled outcomes." *Id*.

After the trial court issued its ruling, MCAC was assessed tens of thousands of dollars in taxes for the period spanning from December 2022 to March 2023. Defendant contended that, in light of this newly-discovered tax liability, he was entitled to relief from the court's judgment under MCR 2.612(C)(1)(b) and (f). Those subsections provide:

> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
> * * *
>
> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).
>
> * * *
>
> (f) Any other reason justifying relief from the operation of the judgment. [MCR 2.612(C)(1)(b) and (f).]

After a hearing on remand, the trial court denied defendant's motion. The court reasoned that defendant was not entitled to relief under MCR 2.613(C)(1)(b) because MCAC's tax debt was not "newly discovered" as defendant knew or should have known that his business activities were incurring taxes, and he could have discovered the extent of MCAC's tax liability by exercising due diligence. The court added that knowing about MCAC's substantial tax liability would not have changed the court's judgment because the court "assumed" that MCAC was paying taxes and that this was accounted for in the parties' valuations of the business. On the latter point, the court emphasized that the parties did not present much evidence about MCAC's value, forcing the court to make numerous assumptions when determining its value.

Turning to defendant's motion under MCR 2.613(C)(1)(f), the court believed that defendant's argument did not fit this subsection because Subsection (f) was only to be used when no other subsection could apply, and the court thought that defendant's claim clearly fit under Subsection (b). Assuming that Subsection (f) did apply, the court reasoned that defendant was not entitled to relief under that subsection because plaintiff did not "create this situation" or "hide evidence" from defendant, particularly considering that she was not involved with MCAC when the taxes accrued between December 2022 and March 2023. The court further reasoned that relief was not appropriate under Subsection (f) because setting aside the judgment would detrimentally affect plaintiff's rights, as she would be subjected "to another trial, and another extended period of discovery or whatever else was going to happen."

On appeal, defendant argues that the trial court erred by denying his motion under MCR 2.116(C)(1)(b) because "there was nothing in the record to support the Court's finding[]" that defendant "should have been aware of the tax liability." Defendant similarly argues that the trial court erred by denying his motion under MCR 2.116(C)(1)(f) because nothing in the record supported that defendant "should have been aware of the tax liability and that there was no basis for relief."

-7-

Problematically for defendant, neither argument fully addresses the trial court's denial of defendant's motion under either subsection. For Subsection (b), the court did not *only* reason that defendant should have been aware of MCAC's tax liability; the court also reasoned that its judgment would not have been different even if it knew about MCAC's tax liability because the court's valuation of the company assumed that MCAC, like most companies, was incurring taxes. And for the court's decision under Subsection (f), the court did not even consider whether defendant should have been aware of MCAC's tax liability—the court denied defendant's motion under Subsection (f) because it believed that plaintiff did not engage in any improper conduct, and because it thought that granting defendant's motion would detrimentally affect plaintiff's substantial rights. By not addressing the actual basis for the trial court's rulings, defendant abandoned any argument that the trial court erred by denying his motion for relief from judgment. See *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020); *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Putting these fatal defects aside, we disagree with defendant's argument that the trial court erred by reasoning that defendant should have known about MCAC's tax liability. The trial court did not need an evidentiary hearing to conclude that a seasoned business owner like defendant should know that their business incurs taxes. The court believed that, with defendant having this knowledge, he could have discovered the extent of MCAC's tax liability through simple due diligence, like speaking with his accountant or consulting someone to appraise the business as part of the divorce proceedings. See *Int'l Outdoor, Inc v SS Mitx, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 359082 and 359811); slip op at 4 (explaining that a party moving for relief from judgment under MCR 2.612(C)(1)(b) must establish that they were "not able to produce the evidence with reasonable diligence"). This reasoning, in our opinion, is sound.

Even if it were not, we would still affirm because we agree with the other reasons provided by the trial court. The trial court concluded that relief was not proper under MCR 2.612(C)(1)(b) because evidence of MCAC's tax liability would not have changed the result of trial. See *id*. at ___; slip op at 11 (explaining that a party moving for relief from judgment under MCR 2.612(C)(1)(b) must establish that the newly discovered evidence is likely to change the result of trial). The court explained that, even knowing of MCAC's substantial tax liability, the court would have valued MCAC the same because the court assumed that the parties' valuation of the company considered the fact that MCAC had incurred and would continue to incur taxes. We agree with this reasoning. A typical appraisal of a business considers the business's debts and tax liability, so it was rational for the trial court to assume that the parties' valuation of MCAC did that too. As for the court's denial of defendant's motion under MCR 2.612(C)(1)(f), we agree with the trial court that, at the very least, granting defendant's motion would detrimentally affect plaintiff's substantial rights because it would force plaintiff to relitigate the divorce trial even though she did not do "anything inappropriate in obtaining the final judgment." *King v McPherson Hosp*, 290 Mich App 299, 308; 810 NW2d 594 (2010) (holding that relief was not proper under MCR 2.116(C)(1)(f) because the opposing parties' "rights would be substantially detrimentally affected" if they were forced to relitigate the case when there was "no suggestion" that they engaged in any wrongdoing).

For all these reasons, we affirm the trial court's denial of defendant's motion for relief from judgment.

## V. ATTORNEY FEES

Finally, defendant argues that the trial court abused its discretion by awarding plaintiff attorney fees. We agree in part.

A trial court's award of attorney fees and the reasonableness of the fees awarded are reviewed for an abuse of discretion. *Lakeside Retreats LLC v Camp No Counselors LLC*, 340 Mich App 79, 88-89; 985 NW2d 225 (2022). The trial court's factual findings in support of the award are reviewed for clear error, "and any underlying questions of law are reviewed de novo." *Id*. at 88-89.

MCR 3.206(D) provides two paths by which a party can demonstrate entitlement to attorney fees:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Plaintiff argued in her motion before the trial court that she should be awarded attorney fees because defendant "unreasonably prolonged this litigation" by entering into "negotiations in bad faith." At the hearing, plaintiff's counsel added that "Plaintiff needs assistance with this attorney fee situation." In its ruling from the bench, the trial court agreed with plaintiff that she was entitled to attorney fees under both MCR 3.206(D)(2)(a) and (b). For Subsection (a), the court found that plaintiff "could not bear the entire cost of this litigation" because her attorney fees were inflated "due to [defendant's] actions" that prolonged the litigation. Related to the latter point, the court found that plaintiff was entitled to attorney fees under MCR 3.206(D)(2)(b) because defendant "did not negotiate in good faith," "did not provide information that was available to him," and "didn't maintain the status quo without making that a difficult process."

On appeal, defendant first contests the award under MCR 3.206(D)(2)(a), arguing that the trial court clearly erred when it found that plaintiff was unable to bear the expense of the litigation. We agree. Plaintiff's counsel submitted a bill for about $15,000, and due to duplicate entries, the court reduced the bill to "about $12,000 or $13,000" and ordered defendant to pay $8,000. Based on the evidence presented at trial, plaintiff had an annual income of $24,700, she no longer had a mortgage payment, and her boyfriend assisted her with paying her household expenses. This evidence all tends to support that plaintiff was able to bear the expense of litigation. In contrast, the trial court did not explain why it believed that plaintiff could not afford her attorney fees; the

court simply said that the litigation went on too long, which does not support that plaintiff could not bear the expense of litigation. Plaintiff likewise provided no support for her assertion at the hearing that she "needs assistance with this attorney fee situation." On this record, we are definitely and firmly convinced that the trial court erred by finding that plaintiff could not bear the expense of the litigation. Consequently, an award of attorney fees was not permissible under MCR 3.206(D)(2)(a).

Because the trial court did not specify how much of its $8,000 ordered attorney fees were being awarded under Subsection (a) versus Subsection (b), our conclusion that the trial court's attorney-fee award was not justified under MCR 3.206(D)(2)(a) requires us to vacate the award of attorney fees and remand for further proceedings. We nevertheless briefly address the trial court's award of attorney fees under MCR 3.206(D)(2)(b) because defendant raises the issue on appeal and it will be relevant on remand.

Defendant concedes on appeal that it was not improper for the trial court to award plaintiff attorney fees under MCR 3.206(D)(2)(b) to the extent that the fees were incurred as a result of defendant's refusal to comply with the status-quo order, but he contends that the remainder of the attorney-fee award was improper. We agree with defendant that the trial court was justified in awarding plaintiff attorney fees under MCR 3.206(D)(2)(b) to the extent that the fees were incurred as a result of defendant's noncompliance with the status quo order. We also hesitantly agree with defendant that the remainder of the attorney-fee award was improper. Attorney fees are proper under MCR 3.206(D)(2)(b) if they were "incurred because the other party refused to comply with a previous court order" or the other party "engaged in discovery practices in violation of these rules." The trial court reasoned that attorney fees were justified under Subsection (b) in part because it found that defendant "did not negotiate in good faith" and "did not provide information that was available to him." The court's justifications, without more specificity, are insufficient— the court did not identify "a previous court order" with which defendant refused to comply, nor did the court explain how defendant's conduct amounted to a discovery violation under the court rules. Without satisfying one of those two conditions, an award of attorney fees under MCR 3.206(D)(2)(b) is improper. If the trial court on remand believes that attorney fees under MCR 3.206(D)(2)(b) are warranted beyond the fees that plaintiff incurred because of defendant's refusal to comply with the status-quo order, the court is instructed to clearly identify either the order that defendant refused to comply with, or the rule that defendant violated with his conduct during discovery.[4]

---

[4] While not necessarily relevant to the disposition of this case, we agree with defendant that the trial court clearly erred when it found that defendant claimed that MCAC "wasn't worth anything" early on in the litigation. Taking the court's assertion at face value, we cannot find any statement in a transcript or filing in the record where defendant asserted that MCAC was worthless. It is possible that the trial court was speaking hyperbolically or even referencing an off-the-record conversation it had with the parties, but either way, the court's finding that defendant claimed that MCAC "wasn't worth anything" was clearly erroneous because it is unsupported by the record.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle